

Villanova University School of Law
Villanova University School of Law Digital Repository

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2005

# Ye v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1740

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ye v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1177.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1177

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-1740

QUN HUI YE,

Petitioner

v.

ALBERTO GONZALES,* Attorney General
of the United States,

Respondent

(*Amended pursuant to Rule 43(c), Fed. R. App. P.)

_____

On petition for review of a final order
of the Board of Immigration Appeals
File No. : A79-456-569

_____

Before: McKEE, SMITH and VAN ANTWERPEN, *Circuit Judges*

(Filed: May 17, 2005)

_____

OPINION OF THE COURT

_____

SMITH, *Circuit Judge*.

　　Qun Hui Ye filed a timely petition for review of the decision of the Board of

Immigration Appeals ("BIA") affirming the denial by the Immigration Judge ("IJ") of his

application for asylum, withholding of removal and relief under the Convention Against Torture. The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b). We exercise appellate jurisdiction under 8 U.S.C. § 1252.

Because the BIA affirmed the IJ's decision without opinion, "we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Our review is limited to determining whether there is substantial evidence to support the IJ's decision. *Id.* at 247. This requires that we determine "whether a reasonable fact finder could make the same determination as the agency based on the administrative record." *Id.* at 249. If so, there is substantial evidence to support the finding. *Id.*

Ye, a native of the People's Republic of China, filed an application for asylum based on religious persecution on November 4, 2003. A statement appended to his application indicated that he was twenty years old and was persecuted by the Chinese government because his parents were Falun Gong practitioners. Ye explained that on February 27, 2002, his mother was arrested while he and his brother were in school. That same day, the police seized him and his brother at school, and interrogated them about their father's whereabouts. Ye did not respond, but asked where his mother had been taken. The policeman responded by slapping Ye's face, which caused him to "almost" faint. His brother, who witnessed this event, cried and refused to heed the policeman's instruction to stop crying. This, according to Ye, prompted the policeman to kick Ye in

the chest and beat him to the floor. Ye and his brother were detained for two days in a small, dark room.

Ye's statement further related that a month later, in April 2002, the police came to his house and questioned him about his father's whereabouts. They threatened to beat and to imprison Ye if he did not disclose his father's whereabouts. In response to this lone threat, Ye fled to his aunt's house with his brother. After a relative suggested he go to America, relatives and friends helped him leave China in January 2003.

At a hearing before the IJ, Ye's testimony varied in some signficant respects from the statement appended to his asylum application. For example, Ye claimed for the first time that the police also suspected that he was practicing Falun Gong. According to Ye, when he denied as much, the police "just slap me once, then they kicked me in my abdomen once," causing him to actually faint. Ye testified that nothing happened to his brother who was crying. Ye averred that he and his brother were detained for two days in a dark cell without food.

Ye's description of what transpired after his release also changed. He testified that the school authorities dismissed him because he was "practicing Falun Gong." Instead of the police returning to question him a month later, in April 2002, Ye testified that the police visited him two days after his release to inquire about his father and every three to four days thereafter. Ye also claimed that he was under surveillance. Consistent with his earlier statement, Ye testified that he fled with his brother after being threatened in April.

3

During cross-examination, Ye was confronted with the fact that his asylum application did not indicate that he was accused of practicing Falun Gong, that he was questioned repeatedly about his father's whereabouts, that he was dismissed from school, and several other discrepancies. Even though Ye stated that his asylum application was true and correct at the beginning of the IJ hearing, he blamed the fact that his application indicated that he remained in school until April 2002 on his lawyer. Ye acknowledged the other omissions and stated that he just "wrote approximately" when completing his application. Ye admitted that he had not experienced any problems with the authorities while he was at his aunt's house.

At the conclusion of the hearing, the IJ rendered an oral decision denying Ye's application for asylum, withholding of removal and relief under the CAT. She explained that Ye's assertion that he was seized because the authorities thought he practiced Falun Gong was an entirely new motive that was never mentioned in his application. The IJ noted that another significant omission from Ye's application was the fact that the police visited him repeatedly, every three to four days. In light of several other discrepancies in his story, and in the absence of any corroborating testimony, the IJ concluded that Ye was not credible.

Alternatively, the IJ assumed Ye was credible and concluded that the treatment Ye suffered did not constitute persecution. In addition, the IJ found that Ye had not established a well-founded fear of persecution because he had remained in China for

4

some time without problems and his brother had yet to encounter any difficulties with the authorities.

Ye appealed, arguing that the IJ's adverse credibility determination was not supported by substantial evidence.[*] We disagree. As the IJ explained, Ye's story changed significantly. His new claim, that the police thought he was a Falun Gong practitioner and that he was continually harassed about his father's whereabouts before being threatened, were facts at the heart of his claim. The omission of these facts from his application is glaring. These changes to his story, together with the other discrepancies identified by the IJ, constitute substantial evidence for the IJ's adverse credibility finding. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (observing that inconsistencies involving the heart of an asylum claim may warrant an adverse credibility determination).

Furthermore, we agree with the IJ that Ye was not persecuted. Persecution, as interpreted by the BIA, "include[s] threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993) (concluding that this interpretation by the BIA of the term persecution was permissible). The single slap and solitary kick Ye endured were not sufficiently severe to constitute persecution. Ye argues that this mistreatment together

---

[*]Before us, Ye did not present any argument relating to his initial request for relief under the CAT. Accordingly, he has waived that claim and we consider only his application for asylum and withholding of removal. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

with the continual harassment regarding his father's whereabouts and the threat of additional jail time rose to the level of past persecution. This argument is without merit in light of the IJ's observation that Ye lived in China for some time after being threatened without being subjected to additional jail time or other problems.

We also find substantial evidence for the IJ's determination that Ye did not have a well founded fear of persecution. As the IJ noted, Ye's alleged fear of persecution if repatriated was undermined by the fact that he remained in China for nine months without problems and that his brother, who was left behind, has not encountered difficulties. *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005).

For these reasons, we conclude that the IJ's decision is supported by substantial evidence. We will deny the petition for review.