

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2005

# Tjen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3537

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Tjen v. Atty Gen USA" (2005). *2005 Decisions.* Paper 61.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/61

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 04-3537
_____

FIE FIE TJEN,
*Petitioner*

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board No.  A79-309-808)
_____

Submitted Under Third Circuit LAR 34.1(a)
November 14, 2005
Before: ROTH, FUENTES and BECKER, *Circuit Judges*

(Filed: December 22, 2005)

_____

OPINION
_____

BECKER, *Circuit Judge.*

Fie Fie Tjen, a native and citizen of Indonesia, petitions for review of an order of

the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ")

denial of Tjen's applications for asylum and withholding of removal.

The facts upon which the petition is based are tersely stated in Tjen's brief as follows. Petitioner is a 53-year-old woman of Chinese descent. She is a native and citizen of Indonesia, and a Christian. Since childhood she has experienced discrimination and threats as a Chinese Christian, including racial taunts and threatening language. In 1998, she and her children were present when riots broke out in the area where they were dining at a restaurant. Tjen and her children had to hide in a nearby bakery because a group of native Indonesians was yelling "kill the Chinese." On another occasion one of Tjen's daughters was sexually molested while walking home from school, and called "Chinese." Additionally, during the riots in Jakarta and other parts of Indonesia in 1998, Tjen's place of work was attacked and burned. She left for home but before arriving, she contacted her children and told them to hide because there were men in the streets shouting "kill the Chinese." Tjen testified that her mother's house, where her children were staying, was robbed in January of 2002. The robbers stole a television and cut Tjen's brother with a knife, but fled the house when Tjen's mother ran out the back door yelling for help. Neither of these incidents were reported to the police. Tjen also testified that her two children live in Jakarta and are attending college and that her mother and eight siblings live in Indonesia.

The IJ concluded that the problems Tjen described (riots, robbery, harassment, etc.) were not persecution. The IJ also concluded that the other incidents cited by Tjen (being called names, being touched by strangers, having rocks thrown at her automobile,

etc.) amounted to street crimes, not persecution. The IJ pointed out that Tjen was never prevented from attending church or going to high school and that Tjen's daughters were currently attending college in Indonesia. The IJ reasoned that while Tjen was generally credible, she "has not provided a scintilla of evidence that she has ever been persecuted in the past nor that she would suffer persecution if she returns home to Indonesia." The IJ also found no evidence that the government of Indonesia persecuted ethnic Chinese generally or Christians on the island of Java (where Tjen lived) or was unwilling or unable to protect them.

Our standard of review is extremely deferential; we must uphold the IJ's findings if they are "'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)), and may not reject them "unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). Under this standard, it is clear that the IJ's conclusion that Tjen had neither established past persecution nor a well-founded fear of future persecution, and so was not eligible for asylum, is supported by substantial evidence.

That the incidents and events recounted in the record do not amount to persecution is made clear by our discussion in *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), where we rejected similar claims of persecution by an ethnic Chinese Christian in Indonesia. Concomitantly, we note that there is no allegation of government-sponsored persecution here, which, if present, could support an asylum case. And there is no evidence of a

3

pattern or practice of persecution against individuals of Chinese descent in Indonesia at this time. *See id.* at 537-38. We add that the fact that Tjen's numerous family members continue to live in Indonesia unharmed undercuts her claim of a well-founded fear of persecution. *Id.* at 537 ("when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of persecution is diminished.").

Tjen's claims of religious (as opposed to ethnic) persecution also fail. The State Department reports that the Indonesian "Constitution provides for freedom of religion for members of officially recognized religions [including Christianity] . . . and the Government generally respects this right in practice . . . ." United States Department of State, *Annual Report on International Religious Freedom* 150 (2001). *See also Lie*, 396 F.3d at 537-38.

The petition for review will be denied.