

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2005

# Lie v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-4106

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lie v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1514.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1514

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-4106
_____

IMELDA LAURENCIA LIE
SOYONO LIEM
ANDRE YULIUS SUYONO

*Petitioners*

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,
*Respondent*

_____

On Petition for Review of Orders of the
Board of Immigration Appeals
(Board Nos. A78 696 420, A 78 696 421, A 78 696 422)

_____

Argued: December 13, 2004
Before: NYGAARD, ROSENN, and BECKER, *Circuit Judges*.

(Filed: February 7, 2005)

David E. Piver
W. John Vandenberg (Argued)
150 Strafford Avenue
Suite 115
Wayne, PA 19087
        *Attorneys for Petitioner*

Linda S. Werney
Douglas E. Ginsburg
John M. McAdams, Jr.
Kathleen M. Zapata (Argued)
United States Department of Justice
Office of Immigration
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Attorneys for Respondent*

_____

OPINION OF THE COURT

_____

BECKER, *Circuit Judge*.

Imelda Laurencia Lie, her husband, Soyono Liem, and her minor son, Andre Yulius Suyono, petition for review of an order of the Board of Immigration Appeals (BIA) denying their application for asylum and withholding of removal.[1] This case tracks a now familiar fact pattern: Lie is an Indonesian citizen who alleges that she and her husband were persecuted because they are ethnically Chinese and Christian. More specifically, Lie alleges, as is common in these cases, that she and her husband were robbed on

---

[1] Lie filed the application with the former Immigration and Naturalization Service (INS), and included her husband and son as derivative applicants. The application also included a claim based on the Convention Against Torture (CAT). On appeal, however, Lie has not raised any argument regarding the denial of her CAT claim except by mentioning the Convention in her concluding paragraph; nor did she rebut the government's argument that she has waived this issue in her reply brief or at oral argument. As such, we deem her appeal of the CAT claim to have been waived. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) (holding that absent "extraordinary circumstances" appellant must present an argument in support of each issue raised on appeal or such issues are abandoned and waived).

2

separate occasions by unknown individuals who targeted them because of their ethnicity and their religion.

However, substantial evidence supports the BIA's conclusion that these robberies were not motivated by religion or ethnicity, and that, at all events, such robberies were not sufficiently severe so as to rise to the level of persecution. Moreover, we agree with the BIA's conclusion that Lie has not established a well-founded fear of persecution if she were to return to Indonesia. Therefore, we will deny the petition for review.

## I. FACTS AND PROCEDURAL HISTORY

Lie became a naturalized Indonesian citizen around the time she married her husband in 1990. Lie and her husband lived separately for work reasons in towns about four hours apart. As noted above, both Lie and her husband are ethnically Chinese and are Christians. In the late 1990s, Indonesia's Chinese Christian population became the target of widespread attacks perpetrated by Muslim Indonesians. The 1999 United States State Department country report for Indonesia noted that "[i]nterreligious violence and violence against ethnic minorities continued. Attacks against houses of worship continued, and the lack of an effective government response to punish perpetrators and prevent further attacks led to allegations of official complicity in some incidents." U.S. Dep't of State, 1999 Country Reports on Human Rights Practices – Indonesia, Feb. 25, 2000 ("1999 Country Report"). In May 1998, there were "serious and widespread attacks" on Chinese-owned businesses and homes by Muslim Indonesians, which led to the deaths of over one thousand people. *Id*. Thus, 1998 represented a period of significant violence and rioting against individuals of Chinese origin throughout Indonesia.

Lie alleges that at the start of this tumultuous period, in 1997, several native, Muslim Indonesians entered her husband's store, threatened him with a knife, called him a "Chinese pig," and then robbed him. Traumatized as a result of the robbery, her husband left for the United States in December 1997.

Lie further claims that in July 1998, two people knocked on the door of her home, called her a "Chinese pig," and demanded entry. They knocked down the door brandishing a knife, threatened to burn down her house, and demanded that she give them money.

3

The intruders took some of Lie's money and jewelry and struck her in the left forearm with the knife when she tried to defend herself. When they left, Lie called the police, but claims that no one at the police station answered the phone. Lie received several stitches for the knife wound. However, for the next twenty-one months, Lie and her son continued to live in the same house without incident.

Lie and her son did not leave Indonesia until March 2000, when they came to the United States as non-immigrant visitors. On August 14, 2000, Lie filed an asylum application with her husband and son as derivative applicants. On September 26, 2000, the INS commenced removal proceedings against Lie, her husband, and her son. The Immigration Judge (IJ) initially indicated he would grant asylum subject to the admission of additional evidence from both parties, including evidence confirming that Lie is a Catholic. Because Lie did not provide the information in time, the IJ denied her asylum application. Lie filed a timely motion to reopen the case and produced evidence that she is a Catholic and attends mass every Sunday. The IJ then reopened the case and granted the motion for asylum.

The IJ made credibility findings in Lie's favor, including that the IJ had "no reason to dispute the veracity of [the] claim that [Lie] and her husband are ethnically Chinese" and that Lie was in fact Catholic. The main issue addressed by the IJ was the motivation of the individuals who robbed Lie's husband and Lie. While finding that the attackers had some interest in simple robbery, the IJ concluded that, "taking into account the context in which the respondent's claim arises, it is reasonable to conclude that those who robbed the respondent and her husband were motivated at least in part by a desire to punish them because of their ethnicity." In addition to Lie's testimony about the incident, the IJ relied on evidence of the 1998 anti-Chinese riots and other violence directed against ethnic Chinese during this period documented in the 1999 Country Report. Therefore, the IJ found that Lie and her husband had suffered past persecution, and that the presumption of future persecution had not been rebutted by evidence of changed conditions in Indonesia.

The government appealed to the Board of Immigration Appeals (BIA), which overturned the IJ's grant of the Lies' asylum petition. The BIA found that "with regard to the single incident of abuse [Lie] has described, a robbery of her store, there was no

4

evidence that it was motivated by her religion. As for her claim that the robbery was motivated by her Chinese ethnicity, the only evidence to support that claim was her testimony that her attackers said 'you Chinese pig, I want your money,'" which the BIA found to be insufficient.[2]

The BIA further reasoned that even if the ethnic slur was sufficient to establish that the intruders were motivated by Lie's ethnicity or religion, the robbery incident did not constitute persecution. *See Fatin v. INS*, 21 F.3d 1233, 1240 n.10 (3d Cir. 1993) (holding that persecution denotes "extreme conduct"). The BIA found significant that Lie's Chinese neighbors were not robbed, that Lie tried only once to contact the police, and that she lived for nearly two years after the attack without incident before fleeing to the United States. It therefore rejected the IJ's finding that Lie had suffered past persecution.

Similarly, the BIA concluded that Lie lacks a well-founded fear of future persecution. In its view, the fact that she remained in Indonesia for nearly two years after the robbery because her son was in school undermined her claim that her "primary motivation for requesting refuge in the United States is 'fear,' i.e., a genuine apprehension or awareness of danger in another country." *Matter of Acosta*, 19 I. & N. Dec. 211, 221 (BIA 1985). In addition, the BIA noted that all of Lie's and her husband's siblings remain in Indonesia and have been unharmed during this period—a factor which the BIA had previously held would reduce the reasonableness of alien's fear of future persecution. *See Matter of A-E-M*, 21 I. & N. Dec. 1157, 1160 (BIA 1998).

Concluding that Lie had failed to establish past persecution or a well-founded fear of persecution, the BIA overturned the IJ's decision and denied asylum, withholding of removal, and Lie's CAT claim. Lie now petitions for review on her asylum and withholding of removal claims. We set forth the by now familiar principles governing our jurisdiction and scope and standard of

---

[2] The BIA seems to have conflated Lie's testimony about the earlier robbery of her husband's store with her testimony about the subsequent break-in and robbery at her home. This mistake, however, does not appear to undermine the outcome of the BIA's reasoning.

review in the margin.[3]

## II. DISCUSSION

Under 8 U.S.C. § 1158(b)(1), the Attorney General may grant asylum to an alien who is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42). Generally speaking, an applicant must show that he or she

> is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of [the country of such person's nationality or in which such a person last habitually resided], because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1).

Lie challenges the BIA's finding that she did not suffer past

---

[3] We have jurisdiction to review final orders of the Board of Immigration Appeals under section 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1) (1999). As the petition for judicial review was filed within thirty days of the BIA's decision, the petition is timely. 8 U.S.C. § 1252(b)(1).

Where, as here, the BIA issued a decision on the merits and not simply a summary affirmance, we review the BIA's, not the IJ's, decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002); *Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001). We must uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 480 (1992). We should find substantial evidence lacking only where the evidence "was so compelling that no reasonable factfinder could fail to find the alien eligible for asylum or withholding of removal." *Id.* at 483-84; *see also* 8 U.S.C. § 1252(b)(4)(B); *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

persecution and its conclusion that she has failed to establish a well-founded fear of future persecution.

## A. Past Persecution

Lie claims that the intrusion into her home and the robbery of her husband's store constituted past persecution on account of her Chinese ethnicity and Christian religion. As noted above, the BIA concluded that Lie had not established the intruders were motivated by her ethnicity or religion, and that, even if they had such motivation, the incident was not sufficiently severe so as to rise to the level of past persecution. We agree with the BIA's conclusion and similarly hold that Lie has not established her claim of past persecution.

### 1. "On Account Of"

An asylum applicant must prove that she suffered past persecution or has a well-founded fear of future persecution "on account of" one of five enumerated grounds: "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(1). The Supreme Court, in *INS v. Elias-Zacarias*, held that while an asylum-seeker would not "be expected to provide direct proof of his persecutors' motives," nevertheless,

> since the statute makes motive critical, he must provide *some* evidence of [motive], direct or circumstantial. And if he seeks to obtain judicial reversal of the BIA's determination, he must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.

502 U.S. 478, 483-84 (1992).

We have recognized that "[a] persecutor may have multiple motivations for his or her conduct, but the persecutor must be motivated, at least in part, by one of the enumerated grounds." *Lukwago v. Ashcroft*, 329 F.3d 157, 170 (3d Cir. 2003); *see also Chang v. INS*, 119 F.3d 1055, 1065 (3d Cir. 1997) (finding persecution on account of political opinion where persecutor's action was "motivated, at least in part" by the applicant's political

opinion).

Even though Lie testified that during both the robbery of her husband's store and the robbery of her home the attackers called each of them a "Chinese pig," the BIA determined that "a single ethnic slur" was insufficient to establish that the thieves were motivated by Lie's or her husband's ethnicity. Indeed, the BIA cited significant evidence supporting the conclusion that the attackers were motivated by money: the attackers fled after stealing her jewels and money; her Chinese neighbors were not robbed; the robbery of relatively wealthy individuals such as the Lies was not uncommon in Indonesia; and Lie and her son lived in peace for almost two years following the attack.

While the 1999 Country Report did provide evidence that there was widespread animus against ethnic Chinese, the BIA was nevertheless entitled to rely on the evidence that, in Lie's particular case, the robberies were motivated by money. We find that the evidence of general ethnic difficulties would not compel a reasonable factfinder to conclude that the intrusions were "on account of" Lie's ethnicity or religion. Therefore, the BIA's decision to deny Lie's claim on this basis was supported by substantial evidence in the record.

### 2. Not Sufficiently Severe

The BIA also found that, even assuming, *arguendo*, that the robberies were motivated by Lie's ethnicity, the incidents did not rise to the level of persecution because the harm suffered was not sufficiently severe. The finding that the robberies did not constitute persecution seems to be an appropriate application of the standard announced in *Fatin v. INS*, where we defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." 12 F.3d 1233, 1240 (3d Cir. 1993).

Simple robbery, in isolation, while unfortunate and troubling, does not seem to meet this stringent standard. *See Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004) ("Random, isolated criminal acts perpetrated by anonymous thieves do not establish persecution."); *Halim v. Ashcroft*, 109 Fed. Appx. 164 (9th Cir. 2004) (non-precedential opinion) (holding that a Chinese Indonesian had not suffered past persecution after begin robbed at a Chinese restaurant by native Indonesians who said,

8

"You Chinese, give us all your belongings," but was rather "the victim of disturbing, but random, crime"); *Djap v. Ashcroft*, 2004 113 Fed. Appx. 376, 378 (10th Cir. 2004) (non-precedential opinion) (finding that "the mistreatment [petitioner] experienced was insufficient to rise to the level of persecution" in the case of an ethnically Chinese Indonesian who claimed that, because of his ethnicity, he was beaten and robbed by native Indonesians and that his shop was looted and burned during the 1998 riots). We agree with the Ninth and Tenth Circuits that Lie's account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution.

B. Well-Founded Fear of Future Persecution

The BIA also found that Lie failed to establish a well-founded fear of future persecution if she and her family were to return to Indonesia. To establish a well-founded fear of future persecution an applicant must first demonstrate a subjective fear of persecution through credible testimony that her fear is genuine. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). Second, the applicant must show, objectively, that "a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." *Id.* To satisfy the objective prong, a petitioner must show she would be individually singled out for persecution or demonstrate that "there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion . . . . " 8 C.F.R. § 208.13(b)(2)(iii)(A).

It appears that the BIA denied Lie's well-founded fear claim primarily because Lie failed to establish that her fear of future persecution was genuine. While Lie testified to having a subjective fear of future persecution, the BIA did not credit this testimony. Instead, the BIA relied on the fact that Lie acknowledged that she came to the United States "to see if she wanted to settle here," and found that Lie did not flee Indonesia because of her fear of persecution. Moreover, important to the BIA's finding that Lie lacked a subjective fear of returning to Indonesia was the fact that Lie did not leave Indonesia with her husband after the first robbery, and waited nearly two years after the subsequent robbery of her

home to come to the United States because her son was still in school. There does not appear to be evidence in the record that would compel us to disturb the BIA's finding that Lie's fear of future persecution is not genuine or reasonable. Thus, we agree with the BIA that Lie failed to establish the subjective prong of the well-founded fear test.

In addition, we agree with the BIA, that Lie has failed to establish either that she faces an individualized risk of persecution or that there is a "pattern or practice" of persecution of Chinese Christians in Indonesia. *See* 8 C.F.R. § 208.13(b)(2)(iii)(A). First, Lie failed to show she has a reasonable, individualized fear of persecution. The BIA noted that all of Lie's and her husband's siblings remain safely in Indonesia, and found that their continued well-being cuts against Lie's argument that she reasonably should fear returning to Indonesia.

We agree that when family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished. *See Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001) ("An applicant's claim of persecution upon return is weakened, even undercut, when similarly-situated family members continue to live in the country without incident . . . ."); *Krasnopivtsev v. Ashcroft*, 382 F.3d 832, 839 (8th Cir. 2004) ("The reasonableness of a fear of persecution is diminished when family members remain in the native country unharmed, and the applicant himself had not been singled out for abuse."). In this case, there is little evidence that Lie would face an individualized risk of persecution any more severe than that faced by her family members or other Chinese Christians in Indonesia.

Second, the evidence in the record does not establish that there is a pattern or practice of persecution of Chinese Christians in Indonesia. The INA regulations do not define what country conditions constitute a "pattern or practice of persecution," and this court has yet to provide further clarification of the standard. At the threshold, we agree with other courts that have held that, to constitute a "pattern or practice," the persecution of the group must be "systemic, pervasive, or organized." *Ngure v. Ashcroft,* 367 F.3d 975, 991 (8th Cir. 2004); *see also Woldemeskel v. INS*, 257 F.3d 1185, 1191 (10th Cir. 2001). At all events, as with any claim

10

of persecution, violence or other harm perpetrated by civilians against the petitioner's group does not constitute persecution unless such acts are "committed by the government or forces the government is either 'unable or unwilling' to control." *Abdulrahman v. Ashcroft,* 330 F.3d 587, 592 (3d Cir. 2003); *see also Yan Lan Wu v. Ashcroft*, --- F.3d ---, 2005 WL 14754, \*3 (3rd Cir. Jan. 4, 2005).

Petitioners argue, with some force, that anti-Chinese violence persists, citing evidence in the record of widespread attacks on Chinese Christians in Indonesia, including press accounts of riots, vandalism, and robbery targeting Chinese Christians. Nevertheless, such violence does not appear to be sufficiently widespread as to constitute a pattern or practice. The 1999 Country Report on Indonesia indicated that there was a sharp decline in violence against Chinese Christians following the period of intense violence in 1998, and noted that the Indonesian government officially promotes religious and ethnic tolerance. Moreover, this violence seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence. Given these considerations, we are not compelled to find that such attacks constitute a pattern or practice of persecution against Chinese Christians.[4]

---

[4]In *Sael v. Ashcroft*, 386 F.3d 922 (9th Cir. 2004), the Ninth Circuit found that an ethnically Chinese citizen of Indonesia established a well-founded fear of persecution. In *Sael*, the panel did not find sufficient evidence of a "pattern or practice" of persecution of Chinese Christians in Indonesia, but rather required a lower level of individualized fear of future persecution because Chinese Christians were at least a "disfavored group." *Id.* at 925-27. A group may be deemed "disfavored" on the basis of evidence of mistreatment that is less pervasive and less severe than would be required to establish a "pattern or practice" of persecution, although "the 'more serious and widespread the threat' to the group in general, 'the less individualized the threat of persecution needs to be.'" *Id.* at 925 (quoting *Mgoian v. INS*, 184 F.3d 1029, 1035 n.4 (9th Cir. 1999)). We disagree with the Ninth Circuit's use of a lower standard for individualized fear absent a "pattern or practice" of persecution and, similarly, we reject the establishment of a

In sum, Lie has failed to demonstrate she has a subjective fear of persecution, which alone would be sufficient to foreclose her claim.  Even if she could establish she subjectively fears persecution upon her return to Indonesia,  Lie has not established the objective prong of the  well-founded fear  test because she has failed to establish an individualized risk of persecution or that there is pattern or practice of persecution of Chinese Christians in Indonesia.  For the foregoing reasons, we will deny the petition for review

---

"disfavored group" category.