

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2005

# Akhtar v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3789

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Akhtar v. Atty Gen USA" (2005). *2005 Decisions*. Paper 876.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/876

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 04-3789
_____

SYED ATIF AKHTAR,
*Petitioner*

v.

ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board No. A79-120-211)
_____

Submitted Under Third Circuit LAR 34.1(a)
June 30, 2005
Before: RENDELL, BARRY and BECKER, *Circuit Judges*

(Filed: July 11, 2005 )

_____

OPINION OF THE COURT
_____

BECKER, *Circuit Judge.*

This is a petition for review by Syed Atif Akhtar, a native and citizen of Pakistan, of a decision by the Board of Immigration Appeals affirming, without opinion, a decision by an Immigration Judge ("IJ") denying Akhtar's requests for asylum, withholding of removal, and relief under the Convention Against Torture. Because the IJ's ultimate decision to deny his application was supported by substantial evidence, as Akhtar has not shown that he will be persecuted if forced to return to Pakistan, the petition will be denied.[1]

Akhtar makes two arguments in support of his asylum claim. First, he contends that he would face persecution as a liberal, pro-American, Sufi Muslim in a country that is becoming increasingly intolerant. Second, he argues that he would be persecuted in Pakistan because of his disability. We are unpersuaded by the Government's timeliness argument, hence we reach the merits.[2]

## I.

The IJ properly rejected Akhtar's claim that he would face persecution in Pakistan due to his status as a pro-American, liberal, Sufi Muslim. Akhtar argued before the IJ that Pakistan has become increasingly fundamentalist and intolerant since the attacks of

---

[1]While we uphold the decision of the IJ, we would be remiss if we did not evince our dismay about the irreverent and unprofessional tone of some of the IJ's remarks, e.g., "Without doubt the respondent clearly prefers his life here, the carefree, tax free fun time that the respondent was having in the United States until the mean old Immigration officer put him in these proceedings," A-28. We trust that the IJ will be more circumspect in the future.

[2]We are also unpersuaded by the argument about the lack of a disability determination.

September 11, 2001. He claimed that the country is now dominated by Sunni Muslims of the Wahhabi sect, and that other Muslims of less fundamentalist sects, such as Sufis, are persecuted. He also argued that Muslims who have lived in the United States or are otherwise seen as pro-American suffer similar persecution, as Wahhabi clerics have issued fatwas requiring Muslims to fight against the United States.

In support of his claim, Akhtar provided statements from his brother, Asif, his father, and himself. Asif's statement recounted how, following his wedding in Pakistan, several fundamentalist Muslims threatened him and his father, claiming that they were "disgusted" by certain modern aspects of the ceremony. It also stated that Akhtar's parents have been robbed three times. (A-210.) Akhtar's father's statement is not part of the record we have, but it apparently recounted some of the threats that Akhtar's parents have faced. (A-27.) Akhtar's own statement described conditions in Pakistan in general terms and expressed his own fear of returning. (A-221 to A-223.)

The IJ properly concluded that Akhtar had not shown that he had a well-founded fear of future persecution. Akthar has pointed to no evidence in the record showing that he has faced persecution in the past. The IJ found that the robberies Akhtar's parents had suffered did not constitute persecution as the motivation for them was primarily financial, and this conclusion is supported by substantial evidence. While Akhtar argues that he would face persecution were he forced to return (in fact, he testified that he is "going to get killed" if forced to return, A-131), most of his claim is based on general country

3

conditions in Pakistan. Furthermore, there is no evidence in the record showing an unwillingness or inability on the part of the Pakistani government to protect Akhtar and his family. (In fact, the Pakistani Government has helped Akhtar's family move within Pakistan.) In *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), this Court held that "evidence of general ethnic difficulties would not compel a reasonable factfinder to conclude that" the robberies in that case constituted persecution. *Id.* at 535-36. We believe the same principle applies in this case. Since Akhtar's claim is premised on general conditions in Pakistan, the IJ's decision was clearly supported by substantial evidence.

## II.

In 1991, Akhtar was involved in a serious motorcycle accident. As a result of the accident, doctors amputated most of one foot; his other leg is also badly disfigured. (A-221.) He is ambulatory, but has great difficulty taking care of himself and relies heavily on his brother. (A-210 to A-211.) He came to the United States on a medical visa and has received some treatment here for his injuries.

Akhtar argued before the IJ that he was entitled to asylum because, as an individual with a disability, he would be persecuted in Pakistan. He claimed that Wahhabi Muslims view the disabled as outcasts who are responsible for causing their own disabilities. He testified that he was teased repeatedly in the years following his accident and ultimately decided to confine himself to one room in his parent's house. (A-92.)

The IJ found that the treatment Akhtar described did not rise to the level of persecution. She first noted that Akhtar had not argued that he would be unable to obtain medical care in Pakistan. (A-17.) She accepted his contention that medical care in Pakistan is significantly worse than in the United States, but found that he had pointed to no evidence showing that he would be discriminated against in the treatment he received. She then concluded that Akhtar would be able to provide for himself in Pakistan based on his experience as a salesman in the United States, and would further be able to rely on his parents for support. She also noted that he had lived in Pakistan for four years following his accident, apparently without serious incident. As a result, she rejected Akhtar's claim for asylum.

Substantial evidence supports this decision. Akhtar has pointed to no evidence showing that the treatment of disabled individuals in Pakistan rises to the level of persecution, and we see none in the record. While his testimony that individuals with disabilities are often treated as outcasts seems credible, such treatment does not constitute persecution. Additionally, the fact that he lived in Pakistan for several years with his disability without suffering persecution further undercuts his claim.

The petition for review will be denied.