Eddy TJING, Petitioner

v.

**ATTORNEY GENERAL OF the UNITED STATES,** Respondent.

No. 05–4738.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit LAR 34.1(a) Feb. 27, 2007.

Filed: March 2, 2007.

Ephraim T. Mella, Lisa A. Baird, Philadelphia, PA, for Petitioner.

Richard M. Evans, Cindy S. Ferrier, David E. Dauenheimer, P. Michael Truman, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, ALDISERT, Circuit Judges, RESTANI,[1] Judge.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Eddy Tjing, a native and citizen of Indonesia, petitions for review of a final order of the Board of Immigration Appeals ("BIA"). The BIA affirmed the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). In general, we have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. This Court, however, lacks jurisdiction to review Tjing's application for asylum because the BIA deemed his filing untimely. We will deny all remaining claims that are ripe for disposition.

## I.

The parties are familiar with the facts and proceedings before the BIA and the IJ, so we will revisit them only briefly. Tjing is a Christian and an ethnic Chinese citizen of Indonesia. On October 23, 1998, he entered the United States for an authorized six-month stay. On February 24, 2003—almost four years after the expiration of his legal status—Tjing filed an application for asylum, withholding of removal and relief under CAT.

In the hearing that followed, Tjing asserted that he suffered persecution in Indonesia on account of his religion and ethnicity. Tjing also claimed that he would be killed if he were to return to his native country. Tjing testified that as a child he was beaten up and taunted by his classmates for being Chinese. The petitioner also claims that in 1987 his family's home was burned by ethnic Indonesians and that the Indonesian government seized the family's land without compensation. Finally, Tjing testified that the family of his ex-girlfriend harassed him because he refused to convert to Islam and marry their daughter. Tjing stated that in September of 1998 the woman's family hired a group of thugs to torment him and force him into marriage. He alleges the gang threatened him and pursued him when he fled town. Fearing that he could not live safely in Indonesia, Tjing moved to the United States to live with his sister and eventually applied for asylum, withholding of removal, and protection under CAT.

The IJ who considered Tjing's case determined that he was ineligible for asylum because his application was not filed in a timely manner. *See* 8 U.S.C. § 1158(a)(2)(B). The IJ also denied Tjing's application for withholding of removal and relief under the Convention Against Torture. The judge determined that none of the harm Tjing suffered qualified him for withholding of removal or protection under CAT, and that Tjing failed to establish the likelihood of future persecution. *See* 8 U.S.C. § 1231(b)(3)(A) (governing withholding of removal claims); 8 C.F.R. §§ 1208.16, 1208.18 (governing CAT claims). Tjing appealed to the BIA.

The BIA adopted the IJ's decision. The Board also wrote a separate opinion addressing two aspects of Petitioner's appeal. First, the BIA examined the asylum claim and affirmed that Tjing's application could not be considered because it was untimely. Second, relying on our decision in *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir.2005), the BIA held that ethnic Chinese Christians, like the Petitioner, are not subject to any pattern or practice of discrimination in Indonesia.

Tjing now petitions this Court to review the denial of his applications for asylum

---

1.  Chief Judge, United States Court of International Trade, sitting by designation.

and withholding of removal.[2]

## II.

■ We lack jurisdiction to review the asylum claim. Under the teachings of *Tarrawally v. Ashcroft,* we have no power to examine the BIA's determination that Tjing's asylum papers were not filed within the one-year limitations period. 338 F.3d 180, 185 (3d Cir.2003) (interpreting 8 U.S.C. § 1158, which states that no court shall have jurisdiction to review the Attorney General's determination that an alien has filed an asylum application in an untimely fashion). We also lack the authority to review any judgment that the one-year limit was not tolled by extraordinary circumstances. *Id.*

## III.

We retain jurisdiction, however, to appraise the denial of Tjing's petition for withholding of removal. *Id.* at 185–186. Where, as here, the BIA adopts the decision of the immigration judge and makes its own findings, we analyze the decisions of both the IJ and the Board. *Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir.2004). In doing so, we review the decision for substantial evidence and may only disrupt its findings if the "evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft,* 242 F.3d 477, 483–484 (3d Cir.2001).

The law in this area is well-settled; in order to be entitled to withholding of removal, an alien must demonstrate that upon return to his home country, he would be persecuted because of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). This standard requires

the alien to demonstrate that it is "more likely than not" that he would be subject to harm. *INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). An alien can establish eligibility for withholding of removal either by demonstrating past persecution or by showing the likelihood of future persecution. 8 C.F.R. § 1208.16(b). This Court has defined persecution to include "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993).

■ Reviewing the record, we conclude that substantial evidence supports the BIA's conclusion that Tjing does not qualify for withholding of removal. First, Tjing has not demonstrated that he was subject to past persecution on account of his race, religion, nationality, membership in a particular social group or political opinion. Critically, Tjing failed to prove that he was harmed on account of one of the five enumerated grounds. When asked why his home was burned, Tjing testified, "I don't know. It might have been government—politic, politics at the time." (Admin.Rec.44) Based on this admission and the lack of corroborating evidence, the IJ stated he did "not know if [the destruction of the house] was the result of a riotous situation in that country, or if it was a personal vendetta, of if it had some other sinister basis." (App.10). Similarly, when asked why his girlfriend's family sent gang members to threaten his life, Tjing admitted, "they perceived, they perceived me as fooling around with this girl." (Admin.Rec.47). He later added that it may have been "[b]ecause their family really liked me." (Admin.Rec.49). While Tjing's testimony may explain why the thugs ha-

---

2. On appeal, Tjing has not raised any argument regarding his original claim under the Convention Against Torture. As a result, we deem his CAT claim to have been waived. *See Nagle v. Alspach,* 8 F.3d 141, 143 (3d Cir.1993).

rassed him, it does not establish a basis to extend his stay in the United States.

 We next turn to Tjing's contention that he will be subject to *future* persecution in Indonesia because he is an ethnic Chinese Christian. The BIA held that Tjing cannot prove any likelihood of future persecution. We agree. To establish a well-founded fear of future persecution, a petitioner must demonstrate by clear probability that he would be singled out for persecution on account of his race or religion, *or* that there is a "pattern or practice of persecution of a group of persons similarly situated to the applicant...." 8 C.F.R. § 208.16(b)(2). The record shows Tjing has failed to establish that extremists will single him out for persecution on account of one of the protected grounds. Tjing's fear of returning to Indonesia stems largely from the behavior of his ex-girlfriend's family—behavior that seems unrelated to Tjing's religion or ethnicity.

Tjing also failed to establish a pattern or practice of persecution against ethnic Chinese Christians in Indonesia. Under the precedent of this Court, to constitute a "pattern or practice," the persecution of a group must be "systemic, pervasive, or organized." *Lie,* 396 F.3d at 537 (quoting *Ngure v. Ashcroft,* 367 F.3d 975, 991 (8th Cir.2004)). In addition, we have held that an act does not constitute persecution unless such acts are "committed by the government or forces the government is either unable or unwilling to control." *Id.* at 537 (quoting *Abdulrahman v. Ashcroft,* 330 F.3d 587, 592 (3d Cir.2003)).

Tjing argues that the treatment of Chinese Christians by Muslim extremists and jingoist ethnic Indonesians constitutes a pattern or practice of persecution. This argument ignores the precedent of this Court. In *Lie,* we recently held that ethnic Chinese Christians, like Tjing, do not face systematic persecution in Indonesia.

396 F.3d at 538. In that case, we sifted through press accounts of riots, vandalism and robbery of Chinese Christians, and determined that the situation for Chinese Christians had improved markedly in the last ten years. We also held that any ongoing violence appears to be "wrought by fellow citizens" and is not the result of "governmental action or acquiescence." *Id.* at 537. Tjing has not demonstrated that the circumstances in Indonesia have changed for the worse since the decision in ·*Lie.* Accordingly, we find no basis on which to overturn the IJ's finding that Tjing's risk of future persecution in Indonesia is less than a "clear probability." We will therefore deny the petition for review.

## IV.

We have considered all contentions of the parties and conclude that no further discussion is necessary.

The petition for review will be denied.