**Alvianty Pramudita TJEN, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 05–5190.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 22, 2007.

Filed Oct. 30, 2007.

Eleanor H. Chen, Philadelphia, PA, for Petitioner.

Robert A. Zauzmer, Office of United States Attorney, Philadelphia, PA, Erica B. Miles, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, CHAGARES, and HARDIMAN, Circuit Judges.

## OPINION

SLOVITER, Circuit Judge.

Alvianty Pramudita Tjen petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her application for asylum and withholding of removal.

## I.

Tjen, a female Indonesian citizen, entered the United States on December 1, 2000 as a non-immigrant visitor, and was authorized to remain in the United States until May 1, 2001. On June 1, 2001, she filed an application for asylum and withholding of removal, asserting that she had been persecuted in Indonesia due to her Chinese ethnicity. Tjen, who was born in Indonesia and lived there for over thirty years, lived in Cengkarang on the island of Jakarta for fifteen years. At the same time, her five siblings also lived in Jakarta. On September 25, 2001, the government initiated removal proceedings against her and served her with a Notice to Appear before an Immigration Judge ("IJ").

Following the merits hearing on September 3, 2004, the IJ denied Tjen's application for asylum and withholding of removal. The IJ found that Tjen was not credible, and stated that even if she were credible, she had not proven that she had suffered past persecution or had a well-founded fear of future persecution.[1] On appeal, the BIA adopted the findings of the IJ and affirmed the IJ's decision. Tjen has filed a timely petition for review.

## II.

Tjen testified that she applied for asylum because she did "not wish to return" to Indonesia, stating that "there is no guarantee for safety." App. at 111. She based her testimony on three incidents. The first was the alleged theft of medication needed for her father that Tjen's maid had purchased from the pharmacy and which was stolen and discarded by a group of native Indonesians or "Pribumi." App. at 112. Although Tjen testified that these particular robbers "frequently came asking for money," she said that her family never denied them money and that her family never had a prior conflict with them. App. at 113. She testified that her father passed away about a week after the incident, but Tjen admitted that in the affidavit attached to her asylum application, she had said that her father died the same day the Pribumi stole the medication from the maid.

Tjen testified that the second incident occurred in 1977 or 1978 in Tangung Priok, when she was approximately seven years old.[2] On that occasion, she witnessed her sister-in-law being beaten to death as she was attempting to prevent the Pribumi from attacking her store.

The third incident occurred during the Cengkarang riots and robberies of 1998

---

[1] The IJ also denied Tjen's claim under the Convention Against Torture, but Tjen does not pursue that claim on appeal.

[2] At the time she applied for asylum, Tjen was approximately thirty-one years old.

against the Chinese. Tjen testified the Pribumi threatened to rape her and that during a separate incident, in May 1998, her store was burned down by Pribumi and on the next day "masses" of Pribumi chased her, but she escaped in her car. App. at 122. Tjen testified that she stayed in her home for two weeks, but stated in the affidavit attached to her asylum application that she remained at home for "a few days." App. at 134. After that incident, Tjen testified that she found a new job in accounting.

The IJ denied Tjen's applications, stating that she did not believe Tjen's testimony about the death of her father, and concluded that Tjen's "entire story [wa]s incredible and a fabrication," because "[t]he inconsistencies were significant, and the respondent could not explain why these inconsistencies existed." App. at 61. The IJ also discredited Tjen's testimony regarding her family. Tjen had testified that she lost contact with her family in 2004, but the IJ found that testimony to be incredible because Tjen had no idea where they went, even though she had been speaking to them once a month prior to that. Most significantly, the IJ did not believe that Tjen came to the United States out of fear for her safety, because Tjen changed her answer on that point several times and did not appear to be genuinely fearful. In short, the IJ found that Tjen's testimony did not demonstrate that she had suffered past persecution or would suffer future persecution on any of the protected grounds, and that therefore, Tjen was ineligible for the relief requested.

The BIA dismissed Tjen's appeal, affirming the IJ's adverse credibility determination and concluding that Tjen had not

proven past persecution or fear of future harm.[3]

## III.

■ Because the BIA adopted the IJ's adverse credibility determination and discussed some of the underlying bases for that conclusion, it is appropriate to consider the IJ's decision. We review adverse credibility determinations under the substantial evidence standard.

There is substantial evidence to support the BIA's decision to affirm the IJ's adverse credibility determination. Applying the standard enunciated in our opinion in *Xie v. Ashcroft*, 359 F.3d 239 (3d Cir.2004), we hold that no reasonable adjudicator would be "compelled to conclude" that the IJ's determination was incorrect. *Id.* at 243 (citation and internal quotation marks omitted).

Here, Tjen's testimony contains several inconsistencies about her father's death, about the amount of time she remained in her home following the 1998 riots, and about the reason she left Indonesia. Those inconsistencies detract from Tjen's argument that she genuinely feared and presently fears persecution. Looking at the evidence as a whole, no reasonable adjudicator would be compelled to overturn the IJ's finding that Tjen's stated fear of persecution was not credible.

■ Even if we were to assume that all of Tjen's testimony was true, she has still not met the standard for proving past persecution or a well-founded fear of future persecution. Although there is some evidence that Chinese individuals in Indonesia have been the targets of isolated criminal incidents, *see, e.g., Lie v. Ashcroft*,

---

**3.** We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252(a)(1). When the BIA's decision substantially relies upon the decision of the IJ, we have discretion to consider the IJ's decision, as well as the BIA's decision. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir.2004).

396 F.3d 530, 535 (3d Cir.2005), Tjen has not proven that she was persecuted "on account of" her race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42)(A); *Lie,* 396 F.3d at 535. In *Lie,* the petitioner proved that her attackers had used ethnic slurs and that, although not directed at her, there had been some ethnic tension in the area in which she lived. We held that general ethnic difficulties in a region, in combination with the use of an ethnic slur, "would not compel a reasonable factfinder to conclude" that the attacks were "on account of" the petitioner's ethnicity. *Lie,* 396 F.3d at 535.

Here, there is even less evidence of ethnic or religious motivation than in *Lie.* Although Tjen testified that the thieves who took her father's medication knew her family, there is no evidence that the attack was on account of her ethnicity. Similarly, although the incidents in the late 1970s and in 1998 indicate general ethnic difficulties, it is not enough to prove that the specific incidents about which Tjen testified were motivated by ethnicity or religion. *See Lie,* 396 F.3d at 535–36.

■ In addition, the incidents Tjen describes are not sufficiently severe to constitute "persecution" under our precedents. Isolated criminal acts, although they may be unfortunate, do not meet that standard. Tjen has described three isolated criminal acts, separated by over twenty years. Moreover, two of the acts were directed to her family members, not to her. Those acts, though no doubt troubling, are not sufficiently severe to meet the definition of "persecution." *See id.* at 536.

Tjen has also not established a well-founded fear of future persecution. "To establish a well-founded fear of future persecution an applicant must first demonstrate a subjective fear of persecution through credible testimony that her fear is genuine," and "must show, objectively, that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." *Id.* (citation and internal quotation marks omitted).

Tjen has not met either prong. The IJ determined, and the BIA affirmed, that Tjen's fear was not genuine. We have no reason to overturn that credibility determination. In addition, although there is some evidence regarding general conditions of ethnic persecution in Indonesia, it does not rise to the level of a pattern or practice. *See Lie,* 396 F.3d at 537; *see also Konan v. Attorney General,* 432 F.3d 497, 506 (3d Cir.2005).

Finally, Tjen's withholding of removal claim also fails. We have explained that "if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." *Zubeda v. Ashcroft,* 333 F.3d 463, 469–70 (3d Cir. 2003).

## IV.

For the above-stated reasons, we will affirm the decision of the BIA and deny Tjen's petition for asylum and withholding of removal.