

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2007

# Tjhin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3707

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Tjhin v. Atty Gen USA" (2007). *2007 Decisions*. Paper 87.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/87

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3707
_____

KHANG TJHIN,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No.  A96-204-314)
Immigration Judge: Honorable Donald V. Ferlise
_____

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2007

Before: McKEE, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed:  December 12, 2007)

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

Khang Tjhin petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for withholding of removal and relief under the Convention Against Torture (CAT).

I.

Tjhin is a citizen of Indonesia and an ethnic Chinese Christian. He entered the United States as a nonimmigrant visitor and remained here after his visa expired. After he was served with a Notice to Appear, Tjhin admitted removability at his initial hearing and conceded that he did not timely file for asylum, but requested relief in the form of withholding of removal and protection under the CAT.

Following a merits hearing, Immigration Judge (IJ) Donald V. Ferlise denied Tjhin's requests for relief. Although the IJ deemed Tjhin's testimony credible, he found that Tjhin was ineligible for withholding of removal because: (1) Tjhin did not experience harm based on his membership in a protected class; (2) even if Tjhin experienced harm based on his membership in a protected class, this harm did not amount to persecution; and (3) Tjhin did not demonstrate a clear probability of future persecution. The IJ also found Tjhin ineligible for CAT protection because he did not demonstrate a clear probability of torture upon return to Indonesia.

On appeal, the BIA adopted and affirmed the findings of the IJ in a per curiam opinion. Tjhin filed a timely petition for review.

2

The crux of Tjhin's claims for relief is that he suffered persecution in Indonesia on account of his Chinese ethnicity and Christian faith and that he fears future persecution if he is forced to return. At his merits hearing before the IJ, Tjhin described a May 1998 incident in which his family was harassed by native Indonesian rioters while bringing his mother to a hospital for diabetes treatment. He testified that the rioters had looted and destroyed Chinese-owned businesses in the area, and that they began shouting "Chinese, Chinese, kill, kill" when they saw his family. Tjhin testified that he and his family feared for their lives and remained in the hospital for two days to avoid the rioters.

Tjhin also testified that he had been harassed by native Indonesians all his life, and that even as a small child, native Indonesian children would taunt him, beat him up, and take his toys and money. Tjhin indicated that this harassment continued throughout high school and college, testifying that native Indonesians took money from him approximately fifty times during this period and that they would kick or hit him if he refused.

Finally, Tjhin stated that he would feel unsafe if he returned to Indonesia, citing the numerous church bombings that have occurred as well as the harassment he has endured. Tjhin testified that this harassment has persisted after the May 1998 riots and that his family's native Indonesian Muslim neighbors have continued to insult and demand money from them.

The IJ denied Tjhin's requests for relief. Although the IJ found Tjhin's testimony credible, he concluded that Tjhin had not been targeted based on his membership in a protected class. The IJ also determined that even if Tjhin had been targeted because of his membership in a protected class, the harm he experienced did not rise to the level of persecution. Finally, the IJ determined that Tjhin had not demonstrated a clear probability of persecution or torture upon his return to Indonesia.

The BIA denied Tjhin's appeal, adopting and affirming the IJ's findings that Tjhin was ineligible for withholding of removal or protection under the CAT.

III.

We begin by considering the IJ's determination that Tjhin did not experience harm on account of his membership in a protected class. This determination is reviewed under the substantial evidence standard, which requires it to be upheld unless the evidence would "compel a reasonable factfinder to conclude" otherwise. *Lie v. Ashcroft*, 396 F.3d 530, 535-36 (3d Cir. 2005).

In this case, the IJ concluded that the native Indonesians' repeated demands for money were motivated not by Tjhin's ethnicity or religion, but rather by their belief that Tjhin had money and had become an easy mark or target. While this is possible, the IJ's analysis ignores the possibility that the native Indonesians were motivated by Tjhin's Chinese ethnicity as well - that they had "multiple motivations for [their] conduct." *Lukwago v. Ashcroft*, 329 F.3d 157, 170 (3d Cir. 2003). The IJ also saw no connection between Tjhin's encounter with the native Indonesian rioters in May 1998 and Tjhin's

4

ethnicity or religion.  Given that the mob had already targeted Chinese-owned businesses and began to shout "Chinese, Chinese, kill, kill" upon encountering Tjhin and his family, we cannot see how this incident was motivated by anything other than Tjhin's ethnicity. Therefore, we disagree with the IJ's initial finding and conclude that the harm Tjhin experienced was on account of his membership in a protected class.

Although we find that the IJ erred in determining that Tjhin was not harmed on account of his ethnicity, our precedents make clear that the harm Tjhin suffered was not sufficiently severe to constitute "persecution."  In *Fatin v. INS*, we defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life and freedom." 12 F.3d 1233, 1240 (3d Cir. 1993).  Although Tjhin's May 1998 encounter with native Indonesian rioters was undoubtedly frightening, it was an isolated incident in which neither Tjhin nor his family sustained any physical injury.  *See Lie*, 396 F.3d at 536 (finding that an isolated incident in which the asylum applicant suffered a knife wound did not constitute persecution).  Similarly, although Tjhin's repeated experiences of harassment are troubling, they do not meet the stringent standard that we articulated in *Fatin*.[1]  Therefore, even when these incidents are taken

---

[1]  Tjhin cites a Ninth Circuit case, *Borja v. INS*, 175 F.3d 732 (9th Cir. 1999), for the proposition that "beatings and assaults for the purposes of financial extortion constitute persecution."  However, *Borja* involved what the Ninth Circuit called "extortion plus," in which the individual in question was threatened with a gun, slashed in the shoulder, and told that she would be killed if she did not pay.

5

cumulatively, we conclude that Tjhin has not suffered harm that is sufficiently severe to constitute persecution.

Tjhin has also failed to establish the "clear probability" of future persecution that is required for withholding of removal. In order to meet the less stringent "well-founded fear" standard that is applicable to asylum claims, Tjhin must demonstrate either that he faces an individualized risk of persecution or that there is a "pattern or practice" of persecution of Chinese Christians in Indonesia. *Lie*, 396 F.3d at 537. Tjhin has not shown that he would be singled out for persecution upon return to Indonesia; in addition, although there is evidence that some anti-Chinese violence persists in Indonesia, it does not rise to the level of a "pattern or practice." *See Lie*, 396 F.3d at 537. Because Tjhin has "fail[ed] to establish the well-founded fear of persecution required for a grant of asylum, [he] will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." *Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003). Therefore, we conclude that Tjhin's claim for withholding of removal fails.

Finally, we note that Tjhin has not provided any reason why he would be subjected to torture if he is returned to Indonesia. Therefore, we conclude that his claim for protection under the CAT fails.

IV.

6

For the foregoing reasons, we will affirm the decision of the BIA and deny Tjhin's petition for review.