STAPLETON, J.,
dissenting:
I conclude that what separated the IJ and the BIA here was not a dispute about “findings of fact” as that phrase is used in 8 C.F.R. § 1003.1(d)(3) and, further, that the administrative system could not work *894 as intended if the BIA applied the “findings of fact” provisions of that regulation to this type of dispute.
Sections 1003.1(d)(3)(i), (ii), and (iv), provide in part as follows:
(i) Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.
(ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.
íf* ^
(iv) Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals.
Marinescu was able to offer no evidence that he had personally been persecuted in the past. The IJ told him this at the end of the first hearing and suggested that he get an expert. What Marinescu wound up with was a pattern and practice case based solely on one expert’s testimony. The IJ, based on that testimony and a definition of “persecution” from a U.N. handbook, concluded that Marinescu had shown it “a clear probability” (i.e., more likely than not) that he would be persecuted if returned.
The BIA concluded:
... that the objective evidence of record is insufficient to show that the respondent faces a clear probability of harm that would rise to the level of persecution. Although the evidence shows that the longstanding discrimination against the Romani community continues to be widespread in practice, the evidence does not support a finding that the respondent faces a clear probability of suffering legal, economic, and/or social marginalization and abuse, such that his life or freedom would be threatened. The evidence shows both that considerable inequities in access to housing lucrative employment opportunities, and social services remain, and the cases of unjustified police violence against Romani continue to be reported. However, unlike the Immigration Judge, we do not find that the evidence showing the current, unjust treatment of the Romani community, individually or cumulatively, rises to the level of a clear probability of persecution. Further, we note that the evidence tends to show that the Romanian government, while working toward admission into the European Union, is committed to effecting its antidiscrimination framework for improving the situation of the Romani in law, policy, and practice. We therefore find that the respondent has not met his burden of proving eligibility for withholding of removal, and we will reverse the Immigration Judge’s grant of relief from removal.
App. at 21a-22a (citations omitted).
The BIA appears to have resolved two issues here: (1) whether the testimony of Marinescu’s expert and the reports tendered by the government showed a pattern and practice of “persecution” as that term is used in the INA (i.e., “threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom,”) Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir.2005); and (2) whether the evidence as a whole indicated a sufficient degree of risk (i.e., more likely than not) that Marinescu would be persecuted in the future. The BIA’s conclusion in favor of the INS on both of these issues does not, I believe, constitute “factfinding” within the meaning of § 1003.1(d)(3). Indeed, this is the very kind of decision making the BIA frequently does and should do, but we know from subsection (iv) of the regulation that “the Board will *895 not engage in factfinding in the course of deciding appeals.”
The BIA did not question the credibility of Marinescu’s expert witness. It took his testimony at face value and evaluated and weighed it in the context of the cross-examination and the other expert evidence based on the applicable legal standard. Arguably, perhaps, the BIA rejected a factual finding of the IJ that the acknowledged commitment of the Romanian government to equal rights for Romanians is largely ineffective. However, I do not read the BIA’s “furthermore, we note” comment as rejecting the IJ’s finding regarding ineffectiveness. All it says is that the Romanian government, while working toward admission into the European Union, is trying to make things better. Moreover, I don’t regard this as crucial to the BIA’s conclusion concerning the nonexistence of a “clear probability of persecution.” App. at 22a.
I would deny the petition.