**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3325
_____

STANISLAV ALEKSEYEVICH PITEL,
a/k/a STANISLAV PITEL,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A071-415-621)
Immigration Judge:  Honorable Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 13, 2013
Before:  SMITH, GREENAWAY, JR. and SHWARTZ, <u>Circuit Judges</u>

(Opinion filed June 14, 2013)
_____

OPINION
_____

PER CURIAM

    Stanislav Alekseyevich Pitel petitions for review of a final order of removal.  For the

following reasons, we will deny the petition.

Pitel, a native and citizen of Ukraine, was paroled into the United States on a humanitarian basis under the Lautenberg Amendment in 1998. He adjusted to permanent resident status in 2000. In 2006, he was convicted of possessing a small amount of cocaine and was sentenced to three months of probation. Removal proceedings were initiated on the basis of the controlled substance conviction, see 8 U.S.C. § 1227(a)(2)(B)(i), and Pitel conceded being removable as charged.

Pitel applied for asylum and related relief, claiming primarily that he had suffered past persecution in Ukraine because he is Jewish. He testified that he was beaten by gangsters who demanded money and threatened to kill him if he did not pay. He stated that some of the gangsters knew him and called him a "dirty Jew" during the attack. Administrative Record ("A.R.") at 169, 175-76. When asked why he was attacked, Pitel testified that he assumed it was because the gangsters knew he was getting ready to leave the country and had money from the sale of his apartment. Id. at 176. In the declaration submitted with his asylum application, Pitel indicated that the police told him they could not provide around-the-clock protection, so he should leave the country as soon as possible. Id. at 500. Nevertheless, the matter was investigated and the gangsters were brought to trial, although Pitel stated that they received "very light" sentences. Id. at 501. Pitel claimed that he feared the gangsters would seek revenge if he returned to Ukraine. Id.

The IJ found Pitel credible, but denied relief, determining that he had not established past persecution because he failed to show that he was attacked because he is Jewish. Acknowledging the use of ethnic slurs during the attack, the IJ nonetheless concluded that Pitel

2

was targeted because he was suspected to have money from the sale of his apartment. The IJ noted in particular that Pitel was never bothered by the gang until he sold his apartment. The IJ also concluded that Pitel failed to show that the Ukrainian government was unable or unwilling to protect him, which he had to establish because he claimed persecution by private actors. The IJ found that the police did not overlook or tolerate the attack, but instead launched a criminal investigation that resulted in the prosecution of at least one of the attackers.[1] Because he had not established past persecution, the IJ determined that Pitel was not eligible for humanitarian asylum.[2]

The Board of Immigration Appeals ("BIA") dismissed Pitel's appeal, agreeing with the IJ that he had not shown that being Jewish was "at least one central reason" for the claimed persecution. Specifically, the BIA held that:

> There is no clear error in the [IJ's] determination [that Pitel] was attacked in Ukraine because he was suspected to have money after the sale of his apartment and not because he is Jewish. . . . Although [Pitel's] attackers used ethnic slurs, he was not attacked until after he sold his apartment and [Pitel] testified that they targeted him because they assumed he had financial resources.

A.R. at 4. The BIA also agreed that Pitel had not shown that the Ukrainian government was unable or unwilling to protect him, albeit in the context of holding that he failed to demonstrate a well-founded fear of future persecution. Finally, the BIA held that Pitel was not eligible for

---

[1] Although Pitel stated in his declaration that the gangsters were tried and received light sentences, he testified that he was aware of the arrest and trial of only one gang member. A.R. at 175.

[2] We will limit this opinion to the denial of asylum, because Pitel has not challenged in this Court the agency's denial of other forms of relief.

humanitarian asylum because he had failed to establish past persecution. This petition for review followed.[3]

We have jurisdiction pursuant to 8 U.S.C. § 1252. Although we generally lack jurisdiction to review a final order of removal against an alien who is removable for having committed a qualifying controlled substance offense, see 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to review constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(D). Pitel argues that the BIA erred by using a "too-restrictive" interpretation of the standard that "at least one central reason" for the persecution be on account of a protected ground. He contends that the BIA did not recognize that this is a mixed-motive case and that the Board required him to prove that religious/ethnic hatred was the only motive for the attack, despite case law to the contrary. The question of whether the BIA used an incorrect standard to adjudicate this matter is a question of law. See Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 310 (3d Cir. 2011).

To establish eligibility for asylum on the basis of past persecution, an applicant must show that he suffered some harm rising to the level of persecution on account of a statutorily protected ground and that the harm was committed by the government, or forces the government was unable or unwilling to control. Sheriff v. Att'y Gen., 587 F.3d 584, 589 (3d Cir. 2009). In a mixed-motive case, an applicant must establish that a protected ground was "at least one central reason" for the alleged persecution. See 8 U.S.C. § 1158(b)(1)(B)(i); Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129-30 (3d Cir. 2009). A "central reason" is an

---

[3] Pitel filed an emergency motion for a stay of removal, which was denied. We were informed by counsel that Pitel was deported shortly thereafter.

4

essential or principal one, and asylum may not be granted where a protected ground "played only an incidental, tangential, or superficial role in persecution." Ndayshimiye, 557 F.3d at 130.

Here, the BIA and IJ correctly articulated and applied the "one central reason" standard. See A.R. at 4, 63. The BIA affirmed the IJ's determination that money was the reason for the attack, relying on Pitel's own testimony that he assumed he was targeted for financial reasons and that the gang bothered him only after he sold his apartment. The BIA and IJ acknowledged that the gang used ethnic slurs during the attack, but it was in the context of extorting money from Pitel. Given these facts, it was a reasonable application of the standard to conclude that animus toward Jews played only an incidental role in the attack. See Ndayshimiye, 557 F.3d at 132 (finding that threats referring to an alien's nationality were incidental to a personal land dispute, particularly where there was no conflict until the dispute arose); cf. Lie v. Ashcroft, 396 F.3d 530, 535 (3d Cir. 2005) (holding that the use of ethnic slurs during an otherwise ordinary robbery was not enough to show that the robbers acted due to the victim's ethnicity).

Pitel argues that the BIA mischaracterized the testimony, which, when understood in the proper context, established that the gang targeted him because he is Jewish. The proper context, he asserts, is his declaration showing that Jews planning to leave Ukraine under the Lautenberg Amendment were targeted for attacks by gangs. However, even if there is some degree of intertwining explanations for the attack, they are not inextricable and Pitel did not establish that religion/ethnicity was a central motive for the attack. Pitel twice testified that

money was the reason he was attacked. A.R. at 173, 176. Although his declaration generally asserts that "after the USSR disbanded, Ukrainian nationalists started threatening Jews," id. at 500, Pitel testified that he was attacked by a local gang called "Moscow." Id. at 176. He also testified that the police told him that this gang attacked other people, but he did not indicate whether or not the other victims were Jewish. Id. at 175. And the fact remains that Pitel was not attacked until it was suspected he had money, reinforcing the conclusion that money was the proximate motivation for his mistreatment.

Even if there were any doubt regarding the application of the "one central reason standard," the determination that Pitel did not show that the Ukrainian government was unable or unwilling to protect him is an alternative basis for upholding the BIA's decision. Pitel argues that the determination is erroneous because the BIA ignored evidence favorable to him. However, his cursory argument does not raise a legal question. See Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007) (noting that arguments that the BIA or IJ incorrectly weighed or failed to consider evidence are not questions of law). Nor does his argument regarding humanitarian asylum raise a legal question. In any event, such relief is clearly precluded by the failure to establish past persecution. See 8 C.F.R. § 208.13(b)(1)(iii)(A).

For these reasons, we will deny the petition for review, as well as the motion for remand.