

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2007

# Liong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1870

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Liong v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1088.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1088

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No: 06-1870

_____

SUKAMATO MILLION LIONG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

_____

Petition for Review of a Final Decision of the
Board of Immigration Appeals
(BIA No. A96-257-479)
Immigration Judge Donald V. Ferlise

_____

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2007

Before: RENDELL, JORDAN and ALDISERT, *Circuit Judges*.

(Filed May 18, 2007)

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Sukamato Million Liong, a citizen of Indonesia, petitions for review of the final

order of removal by the Board of Immigration Appeals ("BIA") denying his application

for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3).  For the reasons that follow, we will deny the petition.

I.

Liong, a native Indonesian of Chinese descent, entered the United States as a visitor in February 2001.  He remained in the United States after the expiration of his visitor status, and on February 7, 2003, he applied for asylum.  Liong thereafter received a notice to appear in removal proceedings.  At his hearing before the Immigration Judge ("IJ"), Liong conceded that he was removable, that his asylum application was untimely, and that he was applying only for withholding of removal and relief under the Convention Against Torture ("CAT").

Liong contended that he feared persecution in Indonesia because he is Catholic and ethnically Chinese.  He presented no evidence that he had ever been persecuted.  He testified that, while he was in Indonesia, he did not have any problems because of his religion or ethnicity, although there were some "minor problems" in his neighborhood in Indonesia.  His wife, children, and seven siblings remaining in Indonesia have continued to attend church.  He explained that he was afraid to return to Indonesia because "of the existence of terrorists," rumors about Muslim extremists, and church closings in various places in Indonesia.

The IJ denied Liong's applications for withholding of removal and relief under the CAT.  After reviewing Liong's testimony, the IJ concluded that Liong and his family had

2

never been persecuted as a result of their ethnicity or religion. Regarding Liong's testimony about church closings, the IJ noted that, according to that testimony, those churches were a nine hour automobile ride away from where Liong lived. Liong and his family were not prevented from attending church. Finally, the IJ considered the most recent State Department reports relating to religiously motivated violence in Indonesia, but noted that those incidents occurred in parts of the country far from where Liong lived. According to the IJ, there was no evidence in the record that the Indonesian government was unwilling or unable to protect Christians and ethnic Chinese. Thus, the IJ concluded that Liong had failed to prove that there was a clear probability that he would be persecuted on his return to Indonesia, and denied his applications for withholding of removal and relief under the CAT.

Liong appealed to the BIA, challenging only the denial of withholding of removal. On February 9, 2006, the BIA dismissed Liong's appeal, concluding that "[t]he record supports the Immigration Judge's determination that [Liong] failed to meet his burden of proving that, if he is removed to Indonesia, it is more likely than not that he will be persecuted on account of his Chinese ethnicity or Catholic religion."

We have jurisdiction to review the BIA's final decision pursuant to 8 U.S.C. § 1252(a)(1).[1] Where, as here, the BIA defers to the IJ's determination, we review the

_____

[1]Because Liong did not appeal the IJ's decision regarding his CAT application, we may not review that decision. 8 U.S.C. § 1252(d)(1).

3

decision of the IJ. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). The IJ's factual determinations must be upheld if supported by substantial evidence, *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992), and "can only be reversed if the evidence is such that a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzales*, 446 F.3d 508, 515 (3d Cir. 2006).

## II.

To be entitled to withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), Liong must establish that there is a "clear probability" that he will be persecuted on account of a protected ground on his return to Indonesia. *INS v. Stevic*, 467 U.S. 407, 424 (1984). "The question under that [clear probability] standard is whether it is more likely than not that the alien will be subject to persecution." *Id*. Liong may meet this burden by showing that in Indonesia there is "a pattern or practice of persecution of a group of persons similarly situated" to him on account of a protected ground. 8 C.F.R. § 208.16(b)(2). "[T]o constitute a 'pattern or practice,' the persecution of the group must be systemic, pervasive, or organized . . . [and must be] committed by the government or forces the government is either unable or unwilling to control." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005).

Liong argues that the IJ failed to consider the evidence of religious intolerance in Indonesia and that the evidence, properly considered, demonstrates a pattern or practice of persecution in Indonesia on account of religion. Liong points to the 2004 International

4

Religious Freedom Report for Indonesia prepared by the United States Department of State (the "2004 Report"), which describes attacks on churches and other interreligious violence in parts of Indonesia. According to the report, "[a]lthough the Government made significant efforts to reduce interreligious violence, such violence occurred . . . [and,] [o]n some occasions, the Government tolerated the abuse of religious freedom by private groups or failed to punish perpetrators." The State Department's 2003 Country Report on Human Rights Practices for Indonesia also indicates that the Indonesian government at times failed to protect the fundamental rights of minority groups, including religious minorities. According to Liong, this evidence shows that there is a pattern or practice of persecution of Christians in Indonesia.

Contrary to Liong's assertion, the record shows that the IJ did consider the State Department reports. The IJ concluded that the violence was not sufficiently widespread or conducted with sufficient government involvement to qualify as persecution. According to the 2004 Report, the worst of the interreligious fighting appeared to have occurred in particular regions of the country, Central Sulawesi and the Moluccas. Importantly, "[s]ome notable advances in interreligious tolerance and cooperation occurred during the period covered by the [2004 Report]. Government officials together with Muslim and Christian community leaders continued to work together to diffuse tensions in conflict areas, particularly in Central Sulawesi and the Moluccas." *Id*. Thus, while there is evidence of some instances of government tolerance for religious violence,

5

the 2004 Report supports the conclusion that the Indonesian government is, on the whole, trying to prevent interreligious conflict. Therefore, while we would not go so far as to say there is no evidence of problems in Indonesia with the policing of ethnic and religious violence, there is support for the IJ's ultimate conclusion that the violence was not sufficiently widespread or conducted with sufficient government involvement to qualify as persecution.

III.

Liong does not claim that he and his family have been the target of persecution in Indonesia. Thus, his failure to demonstrate a pattern or practice of persecution means that he has failed to prove that it is more likely than not that he will be persecuted on returning to Indonesia. We will therefore deny his petition for review.