

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2007

# Widjaja v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1989

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Widjaja v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1063.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1063

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No:  06-1989
_____

JOHANNES D. WIDJAJA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

Petition for Review of a Final Decision of the
Board of Immigration Appeals
(BIA No. A96-262-319)
Immigration Judge Charles M. Honeyman
_____

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2007

Before:  RENDELL, JORDAN and ALDISERT, *Circuit Judges*

(Filed May 25, 2007)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Johannes D. Widjaja, a citizen of Indonesia, petitions for review of the final order

of the Board of Immigration Appeals ("BIA") denying his applications for withholding of

removal and for relief under the United Nations Convention Against Torture ("CAT").

For the reasons that follow, we will deny the petition.

Widjaja, a native Indonesian of Chinese descent, entered the United States on a non-immigrant visa in January 2000. He remained in the United States after his visa expired, and in February 2003, he applied for asylum. Shortly thereafter, Widjaja received notice to appear in removal proceedings. At his hearing before the Immigration Judge ("IJ"), Widjaja conceded that he was removable and asked for asylum, withholding of removal, and relief under the CAT.

Widjaja testified that he fled Indonesia after an alleged attack on his church in December 1999. According to his testimony, a group of people attempted to break into the Catholic church to attack him and other ethnic Chinese who were inside. The group used ethnic slurs and threatened violence. A fence around the church kept the assailants out, and the police arrived, preventing any actual violence. In March 2003, Widjaja claims to have received a letter from his wife, who continued to live in Indonesia, telling him about threatening phone calls directed to him in February 2003. He testified that he believed the calls were related to the 1999 incident at the church. Finally, Widjaja claimed that he was afraid because his wife's letter mentioned that a fellow church member in Indonesia was detained or arrested. The IJ understood Widjaja to be suggesting that this was also related to the 1999 incident.

The IJ denied Widjaja's applications for asylum, withholding of removal, and relief under the CAT. First, the IJ found no justification for Widjaja's late asylum application and therefore concluded that the application was time barred. Second, the IJ made an adverse credibility determination with regard to the alleged attack on the church, because Widjaja failed to describe the 1999 incident, which supposedly caused him to flee Indonesia, in his application for asylum and never mentioned it until his interview with the Asylum Office in April 2003. The IJ also made an adverse credibility determination with regard to the alleged threats in 2003, because Widjaja claimed that he never contacted his wife after receiving her letter. Widjaja also never tried to discover the circumstances surrounding the alleged detention of the arrested church member. Thus, even if the asylum application was considered timely, Widjaja had no credible evidence of past persecution. Third, the IJ concluded that the incidents described by Widjaja, even if accepted as true, did not rise to the level of persecution.

The IJ also considered evidence regarding interreligious violence in Indonesia, including attacks on churches and on ethnic Chinese. The IJ noted that religious violence and discrimination still occur, but that the record contained evidence of cooperation between Muslim and Christian leaders to diffuse tension in the troubled regions of the country. Also, the IJ observed that, while ethnic discrimination still exists, conditions for ethnic Chinese have improved. Therefore, the IJ concluded that the evidence did not show a pattern or practice of persecution of Christians or ethnic Chinese in Indonesia.

Because Widjaja failed to demonstrate a clear probability that he would be

3

persecuted on his return to Indonesia, the IJ denied his application for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3). In addition, the evidence did not show that it was more likely than not that Widjaja would be tortured by or with the consent of the government on his return, so the IJ also denied his application for relief under the CAT.

Widjaja appealed, and on February 23, 2006, the BIA adopted and affirmed the IJ's decision. The BIA noted that Widjaja's asylum application was untimely, that his claims of persecution were not credible, and that, even if true, the events he described did not establish past persecution. The BIA also addressed the claim that there is a pattern or practice of persecution of Chinese Christians, finding that the IJ "specifically considered and rejected that claim." On that issue, the BIA also noted that it found no precedent from this Court establishing that there is such a pattern or practice of persecution in Indonesia.

We have jurisdiction to review the BIA's final decision pursuant to 8 U.S.C. § 1252(a)(1). Because it was adopted by the BIA, we review the IJ's decision. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). The IJ's factual determinations must be upheld if supported by substantial evidence, *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992), and "can only be reversed if the evidence is such that a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzales*, 446 F.3d 508, 515 (3d Cir. 2006).

II.

4

Widjaja argues that the IJ erred by denying him withholding of removal and relief under the CAT.[1]  To be entitled to withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), Widjaja must establish that there is a "clear probability" that he will be persecuted on account of a protected ground on his return to Indonesia.  *INS v. Stevic*, 467 U.S. 407, 424 (1984).  "The question under that [clear probability] standard is whether it is more likely than not that the alien will be subject to persecution."  *Id.*  To qualify for relief under the CAT, Widjaja must establish "that it is more likely than not that he . . . would be tortured if removed" to Indonesia.  8 C.F.R. § 208.16(c)(2).  According to Widjaja, the record evidence demonstrates a pattern or practice of persecution of Chinese Christians in Indonesia, which, he contends, is sufficient to support his applications.

Widjaja relies here on two reports prepared by the United States Department of State.  According to the 2004 International Religious Freedom Report for Indonesia (the "2004 Report"), "certain policies, laws, and official actions restricted religious freedom, and the police and military occasionally tolerated discrimination against and abuse of religious groups by private actors."  The 2004 Report documents that, during the time period covered by the report, at least 93 people were killed in interreligious violence in two regions of the country, Central Sulawesi and the Moluccas.  During that time, at least 13 churches were destroyed.  The 2003 Country Report on Human Rights Practices for Indonesia (the "2003 Report") states that "[t]errorists, civilians, and armed groups . . .

---

[1]Widjaja makes no argument regarding his asylum application, which was found to be untimely by the IJ.

committed serious human rights abuses . . . and the Government was in some cases unable or unwilling to prevent those abuses." According to Widjaja, the 2003 Report is consistent with the rioting that took place in Indonesia in 1998, in which more than 1000 ethnic Chinese were killed or raped and Chinese businesses were burned or looted.

While the 2003 and 2004 Reports show that discrimination and violence against Christians and ethnic Chinese continues in at least some regions of Indonesia, we do not agree with Widjaja that the evidence here compels the conclusion that there is a pattern or practice of persecution. "[T]o constitute a 'pattern or practice,' the persecution of the group must be systemic, pervasive, or organized . . . [and must be] committed by the government or forces the government is either unable or unwilling to control." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005). Here, the record does not compel us to conclude that such a pattern or practice exists. According to the more recent Report, "[s]ome notable advances in interreligious tolerance and cooperation occurred during the period covered . . . . Government officials together with Muslim and Christian community leaders continued to work together to diffuse tensions in conflict areas, particularly in Central Sulawesi and the Moluccas." Taken as a whole, the evidence supports the IJ's conclusion that there is not a pattern or practice of persecution. The violence and discrimination described by the reports is not sufficiently widespread or conducted with sufficient government involvement to compel us to conclude otherwise. We will therefore uphold the IJ's decision.

6

Widjaja has failed to demonstrate that there is a pattern or practice of persecution of Chinese Christians in Indonesia, and he has not argued that his testimony, which was found not to be credible, is sufficient to support his applications. Therefore, he has failed to show that he is more likely than not to be persecuted or tortured on his return to Indonesia, making him ineligible for withholding of removal or relief under the CAT.

## III.

Widjaja also argues that the BIA's discussion of this Court's precedents was problematic. According to Widjaja, the BIA relied on those precedents, which have not previously found a pattern or practice of persecution of Chinese Christians in Indonesia, and simply dismissed his claim without considering the evidence he presented in this case. That assertion is simply untrue. The BIA explicitly stated that the IJ "specifically considered and rejected" the claim that there is a pattern or practice and then adopted the IJ's reasoning. Widjaja's argument on this point is meritless.

## IV.

For the foregoing reasons, we will deny the petition for review.