

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2008

# Lie v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1809

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lie v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1239.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1239

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1809
_____

FA LIE,

Petitioner,


v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A96-203-458)
Immigration Judge: Rosalind Malloy

_____

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2008

Before: SCIRICA, *Chief Judge*, BARRY and HARDIMAN, *Circuit Judges*.

(Filed: May 12, 2008)
_____


OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Fa Lie petitions for review of an order of the Board of Immigration Appeals (BIA) finding him ineligible for withholding of removal. We will deny the petition.

## I.

Because we write for the parties, we recount only facts essential to our decision.

Petitioner Lie is a native and citizen of Indonesia and an ethnic Chinese Catholic. He arrived in the United States as a nonimmigrant visitor on June 9, 2001 and overstayed his visa. Lie conceded removability, but applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Following a September 12, 2005 hearing on the merits, Immigration Judge (IJ) Rosalind K. Malloy denied Lie's requests for relief.

On appeal, the BIA affirmed the IJ's decision in all respects. Lie filed a timely petition for review that challenged the BIA's decision only with respect to his claim for withholding of removal.

## II.

Lie claims that he suffered past persecution in Indonesia because of his Chinese ethnicity and Catholic faith and that he faces a clear probability of future persecution if he is forced to return. At an evidentiary hearing before the IJ, Lie testified as to a 1989 incident in which he was insulted while interacting with a street vendor; after Lie asked the vendor for more water and cautioned the vendor not to accidentally switch his glass, a

2

pedestrian called him a "Chinese leper" and said "hey, you Chinese, who do you think you are that we want to exchange our glasses with you."

Lie also described two robberies that he claims were motivated by his Chinese ethnicity. First, Lie testified that he was taking a public bus home from work in 1990 when a native Indonesian pulled out a knife and yelled "[a]ll Chinas, give me your wallet." Lie also testified that a few months later, he was again riding the bus when a native Indonesian held a knife to his neck and said "[h]ey China, give me your wallet or this knife would go deeper." Lie claims that although a policeman was five feet away from the bus and witnessed the incident, he "pretended not to seeing [sic] anything and turned his back on the crime."

Furthermore, Lie testified that in May 1998, he encountered native Indonesians rioting in the street while he was heading home from work; fearing for his safety, he went to his cousin's house and hid there for four days. Lie also described an incident in which several Islamic scholars were killed while conducting a seminar near his house; soon after the incident, Lie overheard several Muslims threatening to kill Chinese in retaliation.

Finally, Lie claims that thirty-five Christian churches and two Christian schools were destroyed in 1996 during riots and that a pastor and his family were burned to death. Lie's affidavit also describes the riots of May 1998, in which Chinese homes and stores were burned and Chinese women were raped and killed.

III.

Where, as here, the BIA adopts the IJ's findings and also discusses specific parts of the IJ's decision, we review both decisions. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004). We review the IJ's factual determinations under the substantial evidence standard, which requires us to uphold them unless the record evidence would compel a reasonable factfinder to conclude to the contrary. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003).

IV.

To qualify for withholding of removal, an alien must show a clear probability that his life or freedom would be threatened on account of one of the statutorily-protected grounds. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b). If the alien demonstrates past persecution on account of one of the protected grounds, he is entitled to a presumption that his life or freedom would be threatened upon his return. 8 C.F.R. § 1208.16(b)(1)(i). Alternatively, if the alien cannot establish past persecution, he may qualify for relief by showing that it is more likely than not that he would be persecuted if returned. 8 C.F.R. § 1208.16(b)(1)(iii).

With regard to Lie's claims of past persecution, the IJ noted that none of the incidents that Lie had described were on account of his Catholic faith. In addition, the IJ questioned whether the robberies that Lie described were on account of his Chinese

4

ethnicity.  Alternatively, the IJ found that none of the events that Lie had described rose to the level of persecution.

Though the INA does not define persecution, courts have recognized it as an "extreme concept that does not include every sort of treatment our society regards as offensive." *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993).  In *Fatin*, we described persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Id*. at 1240.  Though the harassment and isolated criminal acts that Lie experienced are undoubtedly troubling, they nevertheless fail to meet the stringent standard articulated in *Fatin*.  Furthermore, though Lie describes various incidents of rioting that occurred while he was in Indonesia, we note that he was not present at any of them.  Accordingly, we hold that substantial evidence supports the IJ's factual determination that Lie did not suffer past persecution in Indonesia.

Lie has also failed to establish that he faces a clear probability of persecution if returned to Indonesia.  To meet the less stringent "well-founded fear" standard applicable to asylum claims, Lie must show either that he faces an individualized risk of persecution if returned or that there is a "pattern or practice" of persecution of ethnic Chinese Christians in Indonesia. *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005).  Lie has presented no evidence to show that he would be singled out for persecution upon his return.  Furthermore, though the country condition reports that Lie has submitted indicate

that some anti-Chinese Christian violence persists in Indonesia, this nevertheless does not rise to the level of a "pattern or practice" of persecution. *See Lie*, 396 F.3d at 537.

Therefore, because Lie has "fail[ed] to establish the well-founded fear of persecution required for a grant of asylum, [he] will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." *Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003).

For the foregoing reasons, we will deny the petition for review.