

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2009

# Tanzil v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2198

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Tanzil v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1345.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1345

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IMG-072                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-2198

———————

HERMAWAN TANZIL,
                                        Petitioner
vs.

ATTORNEY GENERAL OF THE UNITED STATES, Respondent

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96-203-764)
Immigration Judge: Honorable R.K. Malloy

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 20, 2009

Before:  FUENTES, WEIS and GARTH, Circuit Judges

(Opinion Filed: May 20, 2009)

———————

OPINION

———————

PER CURIAM.

        Hermawan Tanzil petitions for review of the Board of Immigration

Appeals' ("BIA") final order of removal.  For the following reasons, we will deny his

petition.

1

Tanzil is a Christian, ethnic Chinese native and citizen of Indonesia. He arrived in the United States in August 2000 with permission to stay for six months. Tanzil overstayed and, after the Government instituted removal proceedings against him, applied for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). He concedes removability, but claims that native Indonesian Muslims will mistreat him on account of his religion and ethnicity if he returns.

Before the Immigration Judge ("IJ"), Tanzil testified to four incidents of mistreatment suffered by him and his family. First, he testified that native Indonesian schoolchildren sometimes used ethnic slurs and spat on him. Second, he testified that, in June 2000, a group of ten people stopped him on the street, punched him, spat on him and stole his motorcycle. Third, he testified that both his parents' and his uncle's businesses were burned and looted during riots in 1998. Finally, he testified that some of his cousins told him that native Indonesians sometimes taunted them on their way to church and threatened to burn it down. Tanzil supported his claims with various articles and the U.S. State Department's Country Report on Human Rights Practices for Indonesia and International Religious Freedom Report for Indonesia for 2003 and 2005.

The IJ denied Tanzil's claims. The IJ did not specify whether she found him credible, but appears to have assumed that he was. She denied his asylum application as untimely because it had not been filed within one year of his arrival and he had not shown any extraordinary circumstances or changed country conditions that might have excused the untimeliness. See 8 U.S.C. § 1158(a)(2) (B) & (D). The IJ also explained

2

that the mistreatment to which Tanzil testified did not rise to the level of persecution and that he had not proven it more likely than not that he would be persecuted or tortured if returned to Indonesia. The BIA dismissed Tanzil's appeal, and he petitions for review.[1]

## II.

On review, Tanzil does not challenge the denial of his asylum application (which we would lack jurisdiction to review, see 8 U.S.C. § 1158(a)(3)) and has not argued his claim under CAT. Accordingly, we address only his claim for withholding of removal. See Sioe Tjen Wong, 539 F.3d at 237. That claim required him to "'establish a clear probability,' meaning 'that it is more likely than not, that [he] would suffer persecution'" if returned to Indonesia. Id. at 236 (citation omitted). Past persecution raises a rebuttable presumption that an alien would face persecution in the future. See Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir. 2005). The BIA concluded that Tanzil had failed to establish either past persecution or a clear probability of future persecution. Tanzil challenges each conclusion, and raises three arguments.

First, he argues that the BIA erred in concluding that the harm he suffered

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a)(1). "Where, as here, the BIA adopts and affirms the decision of the IJ, as well as provides its own reasoning for its decision, the Court reviews both the decisions of the IJ and the BIA." Hashmi v. Att'y Gen., 531 F.3d 256, 259 (3d Cir. 2008). We review the Agency's factual findings for substantial evidence and must treat them as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008) (citations omitted). We have plenary review over its conclusions of law, subject to established principles of deference on agency review. See id. at 231. We assume on review that Tanzil's testimony was credible because neither the IJ nor the BIA found otherwise. See id.

in Indonesia was not sufficiently severe to constitute persecution. According to Tanzil, the harm he suffered should be deemed sufficiently severe when considered in the aggregate and in the context of the apparent ethnic motivation for the taunts and the attack. We disagree. We have consistently held that ethnic taunts and isolated criminal acts like those described by Tanzil, though unfortunate, are not sufficiently severe to constitute persecution. See, e.g., Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). In Lie, for example, we explained that the BIA correctly applied our standard for persecution in concluding that an ethnic Chinese woman in Indonesia had not suffered past persecution when Muslim Indonesians robbed her husband's store at knife-point, broke into her house, used racial epithets, stole her money and jewelry, and stabbed her with a knife. See id. at 533, 536. Because the mistreatment suffered by Tanzil is of the same order, the BIA properly concluded that it did not rise to the level of persecution.

Second, Tanzil argues that he faces a clear probability of persecution because his evidence established a "pattern or practice" of persecution of ethnic Chinese Christians in Indonesia. See Sioe Tjen Wong, 539 F.3d at 232. That argument is foreclosed by our recent decision in Sioe Tjen Wong. In that case, we explained that the 2003 and 2004 country reports on Indonesia do not compel the conclusion that there is a pattern or practice of persecution of ethnic Chinese Christians in Indonesia because, among other things, they describe a continuing improvement in the treatment of that group. See id. at 233-34. We also noted, for informational purposes, that "the reports from 2005 to 2007 document similar or improved treatment of Chinese Christians in

4

Indonesia."  Id. at 234.

Moreover, we reviewed the reports in Sioe Tjen Wong in connection with an asylum claim and concluded that they did not support even an objectively-reasonable fear of future persecution.  See id. at 233.  The "clear probability" standard that Tanzil was required to satisfy in this case is a higher one.  See id. at 236-37.  Thus, Tanzil's reliance on the 2003 and 2005 country reports is unavailing.  So too is his reliance on the other articles and background information he submitted.  Although he claims that the IJ and BIA "ignored" that evidence, the BIA referred to the "background materials" and explained that Tanzil had not shown "sufficient facts reflected in that evidence which would alter the [IJ's] conclusion that he failed to establish a pattern or practice of persecution[.]"  (BIA Dec. at 2.)  We have reviewed those materials, and they do not compel a contrary conclusion.

Finally, Tanzil argues that the BIA applied the wrong legal standard for determining whether there is a pattern or practice of persecution in Indonesia.  According to Tanzil, the BIA failed to consider whether the mistreatment of Chinese Christians in Indonesia is "'systemic, pervasive, or organized'" as required by our precedent.  See Sioe Tjen Wong, 539 F.3d at 233 (quoting Lie, 396 F.3d at 537).  The BIA, however, cited our decision in Lie, reviewed Tanzil's evidence, and determined that it was insufficient to show a pattern or practice of persecution in Indonesia.  Thus, as we explained in rejecting a similar argument in Sioe Tjen Wong, "[a]lthough the BIA did not expressly cite the 'systematic, pervasive, or organized' standard set forth in Lie, the BIA properly reviewed

5

the record and determined" that Tanzil had failed to demonstrate "a pattern or practice of persecution." <u>Sioe Tjen Wong</u>, 539 F.3d at 234 (citation omitted).

Accordingly, we will deny the petition for review. Tanzil's request for oral argument is denied.