*384 OPINION OF THE COURT
PER CURIAM.
Petitioner Hardjanto Suhartono, an ethnic-Chinese Christian and citizen of Indonesia, entered the United States in 2001 with a visitor’s visa. He overstayed the visa and later received a notice to appear. Suhartono appeared before the IJ in 2006 and conceded removability, but sought asylum, withholding of removal, relief under the Convention Against Torture, and voluntary departure. The IJ granted the request for voluntary departure, but denied Suhartono’s other requests for relief, and the BIA dismissed Suhartono’s subsequent appeal. Suhartono then filed a petition for review.[1] I
Suhartono testified that, while in Indonesia, he worked as a businessman selling stationery supplies and medicine. In addition, Suhartono was active as a member of the Pentecostal Church of Indonesia, for which he served on the governing council and participated in missionary work in nearby villages.
At various times, Suhartono experienced poor treatment, and described instances in which individuals repeatedly demanded money from him and his wife or attempted to disrupt his religious services. In 1999, Suhartono and his wife were in a village several miles from their home in Solo. Suhartono was waiting in his truck for his wife, who was selling goods to a store owner. A man later identified as “Singo,” a known criminal in that village, approached Suhartono’s truck and demanded money. Suhartono refused and fled the scene, joining his wife in the store. Singo followed him into the store and stabbed Suhartono in the head, ostensibly because Suhartono refused to pay him. Suhartono later reported the incident to police, who did nothing. He did not encounter Singo again before leaving for the United States.
In 2001, Suhartono’s brother-in-law informed him that Singo and other men, looking for Suhartono, had visited the home of Suhartono’s mother-in-law. The brother-in-law claimed to have heard that Singo wanted to kill Suhartono because he would be paid for killing a pastor. Suhartono did not know who would provide a reward for killing a pastor, and explained only that there is persecution against Chinese people in Indonesia.
In denying relief, the IJ found Suharto-no to be credible, but reasoned that there was no evidence that the stabbing — the only incident Suhartono identified that could be sufficiently severe to rise to the level of persecution — was the product of animosity toward Suhartono’s status as an ethnic-Chinese Christian. As to Suharto-no’s fear that Singo would harm him upon his return to Indonesia, the IJ noted that the brother-in-law’s letter, which contained speculation about Singo’s actions and motives, was insufficient to demonstrate a reasonable fear of future persecution. The IJ further noted that Suhartono presented no evidence that Singo had continued to look for him or that anyone still intended to harm him. The BIA affirmed the IJ’s decision as to the past persecution claim, and noted that Suhartono’s future persecution claim lacked merit, as he presented no evidence demonstrating a pattern or practice of persecution against ethnic-Chinese Christians in Indonesia.
II
We have jurisdiction over Suhartono’s petition for review under 8 U.S.C. § 1252(a). Because the BIA issued its *385 own opinion, we review its decision rather than that of the IJ. See Li v. Att’y Gen., 400 F.3d 157, 162 (3d Cir.2005). However, we also look to the decision of the IJ to the extent that the BIA defers to or adopts the IJ’s reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir.2006). We review agency factual determinations for substantial evidence, and will uphold such determinations “unless the evidence not only supports a contrary conclusion, but compels it.” Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir.2005) (internal citations omitted). Suhartono presents only two arguments on appeal: (1) that the Agency failed to properly consider his prominent status within his church in evaluating the likelihood he would face future persecution, and (2) that this Court should take judicial notice of worsening conditions for ethnic-Chinese Christians in Indonesia.
Suhartono’s first argument is two-fold. First, he contends that the BIA should have expressly considered his status as a prominent and publicly active church member in evaluating whether he could demonstrate a likelihood of future persecution. In that regard, we understand the BIA to have adopted the IJ’s analysis as to Suhartono’s claim that he faces a particularized risk of future persecution. See A.R. 3 (“Inasmuch as we are in agreement with the Immigration Judge’s decision, we affirm his decision based upon and for the reasons set forth therein.”); see also A.R. 38-39 (IJ decision discussing Suhartono’s membership and leadership role in the Pentecostal Church).
Second, Suhartono argues that the IJ erred in determining that he did not reasonably fear future persecution based on his status as a pastor. To demonstrate eligibility for asylum based on a fear of future persecution, an applicant must demonstrate that he “has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country.” Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir.2003). To satisfy the objective prong, a petitioner must show that he would be individually singled out for persecution or demonstrate a pattern or practice of persecution of similarly situated individuals. Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir.2005). In support of his particularized risk claim, Suhartono argued that his brother-in-law’s letter demonstrated that Singo intended to harm him because of his status as a church leader. Given that the statements in the letter were based on hearsay and speculation about Singo’s intent and motivation, we believe the IJ reasonably concluded that, without more, Suhartono failed to meet his burden of proving eligibility for asylum.
To the extent that Suhartono contends that the Agency should have found a qualifying fear of future persecution claim based on a pattern or practice of persecution, the BIA justifiably concluded that he did not present sufficient evidence that the Christian population in Indonesia — let alone Christians who take active leadership roles in their churches — are subject to such a pattern or practice. Indeed, the 2005 State Department report on Indonesia was submitted to the IJ, and, as we have noted in several cases, that report indicates a trend toward better treatment for Chinese Christians. See, e.g., Sioe Tjen Wong v. Att’y Gen., 539 F.3d 225, 233-34 (3d Cir.2008) (noting that State Department reports from 2005 to 2007 describe better conditions for Chinese Christians in Indonesia).
Finally, Suhartono argues that we should take judicial notice of certain news articles and other documents showing increased hostility toward ethnic-Chinese Christians in Indonesia. However, we have held it impermissible to take judicial notice of developments that arise after a *386 final agency determination. See Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir.2004) (citing SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).[2]
Accordingly, we will deny the petition for review.

. The other petitioners in this case are Suhartono’s wife and son, who sought derivative relief under Suhartono’s application.

. Even if we were permitted to consider evidence that was not part of the administrative record, we note that the documentation Suhartono asks us to take judicial notice of was not actually submitted to the Court. Therefore we have nothing to review.