OPINION
PER CURIAM.
Petitioners Roman Paprskarz and Alena Krivakova, natives and citizens of the Czech Republic, seek review of a final order issued by the Board of Immigration Appeals (“BIA”). For the following reasons, we will deny the petition for review.
I.
Paprskarz and Krivakova were admitted to the United States in May and October 2001, respectively, on non-immigrant visas and they were authorized to remain in the United States until August 2001 and April 2002. Both petitioners filed affirmative asylum applications in 2004, but because Krivakova’s claim is based on the persecution allegedly suffered by Paprskarz, she is considered a derivative asylum applicant. See 8 U.S.C. § 1158(b)(3)(A). The petitioners applied for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”) based on the mistreatment Paprskarz suffered due to his Roma ethnicity. After an interview with the Department of Homeland Security (“DHS”), they were placed in removal proceedings for overstaying their visas. They conceded removability, but renewed their request for asylum and related relief.
At the petitioners’ December 2006 hearing before the Immigration Judge (“IJ”), Paprskarz was the only testimonial witness. In brief summary of his testimony, Paprskarz was discriminated against while in school, in finding employment, and in obtaining housing. He was also physically attacked several times due to his ethnicity. Two particularly violent attacks underpin the asylum claim.
First, in February 1995, Paprskarz was attacked as he was returning home from work by four men whom he described as skinheads. Although Paprskarz was not seriously injured, the men attacked him with sticks, called him a “dirty Gypsy,” and threatened to kill him if he did not leave town. The next day, Paprskarz reported the attack to the police, who did nothing other than prepare a written report.
The second attack occurred in August 1997. Paprskarz and two of his friends were returning home from work via a shortcut by a river when they were assaulted by skinheads. Paprskarz was beaten with a wooden axe handle or baseball bat, and his right leg was broken. He and his friends escaped by swimming across the river. Paprskarz went to the hospital where he spent the night and his leg was placed in a cast. The hospital reported the attack to the police, and police officers came to the hospital to speak ■with him about the attack. Although the police wrote a report about the incident, no investigation or arrest followed.
Paprskarz was attacked several more times by skinheads and also by men whom he described as neo-Nazis. None of these attacks were as severe as those that occurred in 1995 and 1997.
*285 In 2000, the petitioners married and they soon applied for a visa to the United States because Paprskarz “had about enough to live there. [He] wanted to try something else.” (A.R.159.) Paprskarz’s parents and sister remain in the Czech Republic in the town where he was born. His wife’s family also remains in the Czech Republic. He fears returning to the Czech republic because he believes that he will be killed.
In support of his claim, Paprskarz submitted background information regarding the treatment of Roma in the Czech Republic, affidavits from the men who were attacked with him in 1997, and an affidavit from Dr. Matt T. Salo, a research anthropologist who concluded that Paprskarz is an ethnic Bergita Gypsy and that his story is consistent with conditions in Eastern Europe. The government submitted the most recent United States Department of State Country Report for the Czech Republic.
On cross-examination, the government highlighted inconsistencies between Pa-prskarz’s testimony and the written statement that accompanied his asylum application. As to the 1995 attack, Paprskarz’s written statement asserted that he did not “even attempt to report the incident to the police, because members of the police force in essence had the same beliefs as [his attackers].” (A.R.340.) Paprskarz explained the inconsistency by asserting that, because the written statement was prepared in English, he did not read it before it was submitted and thus that there must have been a mistranslation.
The IJ then questioned Paprskarz regarding an inconsistency between his testimony and written statement as to the August 1997 attack. Although Paprskarz testified that he spoke to the police regarding the attack after the hospital reported the incident, his written statement asserted that “no reports were filed and no investigation followed. I did not know my attackers and it was pointless to report it to the police who would not act anyway.” (A.R.341.) Paprskarz explained that this was not really an inconsistency, because although he spoke to the police, he did not file a criminal complaint because he did not know who attacked him. (A.R.204.)
On December 21, 2006, the IJ denied all requested relief. He determined that while Paprskarz had established his Roma ethnicity, he was not credible and failed to carry his burden of proof on his claims. The IJ based the adverse credibility determination largely on the inconsistencies between the written statement and the testimony regarding the 1995 and 1997 attacks, as well as Paprskarz’s lack of corroboration regarding those events. The IJ declined to accept Paprskarz’s explanation that the translator had made a mistake as to the 1995 attack.
The petitioners appealed to the BIA. They argued that the adverse credibility determination was unsustainable because the IJ’s corroboration analysis was improper, the inconsistency regarding the 1995 attack was minor, and because the written statement and testimony concerning the 1997 attack were not contradictory.
The BIA dismissed the appeal, finding that the IJ’s credibility determination was not clearly erroneous. See 8 C.F.R. § 1003.1(d)(3)(l). First, as to the discrepancy regarding the 1995 attack, the BIA stated that “given the lead respondent’s assertions in the statement attached to his asylum application that he did not report the incident because the police would not have acted upon it, we find no clear error in the Immigration Judge’s refusal to accept the lead respondent’s explanation of the discrepancy.” (A.R.3.) The BIA continued by determining that Paprskarz did not adequately explain the inconsistency as to whether he informed the police of the *286 second beating. The BIA then stated that “the two material discrepancies” “relate to a central element” of the petitioner’s claim “that he was beaten by non-governmental actors due to his Roma ethnicity and that the government was unable or unwilling to help him.” (Id.) It thus determined that it could not “credit the lead respondent’s claim that he suffered past persecution.”[1] (Id.)
Through counsel, the petitioners now seek review of the BIA’s final order of removal.
II.
We exercise jurisdiction over a petition for review pursuant to 8 U.S.C. § 1252(a)(1). Our review of the denial of an application for asylum and withholding of removal[2] is for substantial evidence, that is, “[w]e will defer to and uphold the IJ’s adverse credibility determinations if they are ‘supported by reasonable, substantial, and probative evidence on the record considered as a whole,’ but such findings must be based on inconsistencies and improbabilities that ‘go to the heart of the asylum claim.’ ” Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir.2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).[3] We must affirm “unless the evidence not only supports a contrary conclusion, but compels it.” Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir.2003) (internal citation omitted).
The Petitioners challenge the adverse credibility determination primarily by asserting that: (1) the IJ should not have relied on Paprskarz’s written statement because the statement was unreliable; (2) the IJ improperly failed to evaluate whether Paprskarz’s explanation for the inconsistencies rebutted the regulatory presumption that he was aware of the statement’s contents; and (3) the IJ failed to make a formal finding in this regard. Under 8 U.S.C. § 1252(d)(1), we lack jurisdiction to consider these challenges because the petitioners did not raise them before the BIA. See Wu v. Att’y Gen., 571 F.3d 314, 317 (3d Cir.2009).
We conclude that the adverse credibility finding was based on substantial evidence supported by the record. See Chen v. Gonzales, 434 F.3d at 216. To establish eligibility for asylum, an applicant must demonstrate, among other things, that the harm supporting his or her claim was “committed either by the government or by forces that the government is either unwilling or unable to control.” Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir.2003). Because Paprskarz asserts that he was attacked by non-governmental actors, establishing the government’s unwillingness or inability to protect him is crucial to his claim.
The record supports the finding that there was a clear inconsistency as to whether Paprskarz reported the 1995 attack to the police. And the BIA properly rejected Paprskarz’s explanation of a mistranslation, especially considering the written statement’s detailed explanation as to his reasons for not reporting the incident. It is less clear whether the written *287 statement and the testimony regarding the 1997 incident were inconsistent or whether Paprskarz’s written statement was merely less detailed than his testimony. Nevertheless, we cannot say that the BIA’s and IJ’s adverse credibility determination is not supported by substantial evidence, and they properly addressed and rejected Pa-prskarz’s explanations for the discrepancies between the statement and his testimony. In sum, the evidence does not compel us to overturn the decision to deny the petitioners’ claims.
For the foregoing reasons, we deny the petition for review.

. Because the petitioners did not address the decision that they failed to establish a well-founded fear of future persecution, we do not have jurisdiction to review that determination. See Lie v. Ashcroft, 396 F.3d 530, 532 n. 2 (3d Cir.2005).

. The petitioners do not seek review of the denial of their claim for CAT relief.

.Because the petitioners applied for relief before May 11, 2005, the REAL ID Act’s standard governing review of adverse credibility determinations is not applicable to this case. See Kaita v. Att’y Gen., 522 F.3d 288, 296 (3d Cir.2008) (explaining the pre-REAL ID Act standard of review).