**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3654
_____

LUZ VELASQUEZ-GARZON
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A88 349 091)
Immigration Judge:  Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 22, 2010

Before: SLOVITER, JORDAN and GREENBERG, Circuit Judges

Opinion filed: July 22, 2010
_____

OPINION
_____

PER CURIAM

Luz Velasquez-Garzon, a citizen of Colombia, entered the United States illegally

in July 2007, and was placed in removal proceedings.  An Immigration Judge ("IJ")

concluded that she was removable for entering without a valid entry document.  See

Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) [8 U.S.C.

§ 1182(a)(7)(i)(I)]. Velasquez-Garzon applied for asylum, withholding of removal, and

for protection under the Convention Against Torture ("CAT"), alleging that she is afraid

to return to Colombia because she was threatened by individuals who are associated with

the Revolutionary Armed Forces in Colombia ("FARC"), a known terrorist group.

According to Velasquez-Garzon, around March 2007, she borrowed a significant

sum of money from an organization known as "Gota Gota." Soon after, she came to learn

that "Gota Gota" was associated with the FARC. Her fears were confirmed when four

male members of the organization came to her house and requested payment in April

2007; when Velasquez-Garzon could not provide the money, they informed her that she

had one week to pay. The same four men returned a week later, and she did not have the

money. The men became violent and aggressive, struck her with a gun, ripped her

clothes, used abusive language, and threatened to kill her. Velasquez-Garzon also

testified that she was harassed by phone and that she believed the threats because a girl in

the neighborhood was killed around the same time. Velasquez-Garzon moved to a new

home approximately two hours away, where she stayed for several months before

traveling to the United States. She believes that if she returns to Colombia, she will be

kidnapped or killed by members of "Gota Gota" or FARC because they want repayment

of the loan.

The IJ found that Velasquez-Garzon was credible, but determined that she was not

2

entitled to asylum or withholding of removal because her fears stemmed from a personal matter without any nexus to her race, religion, nationality, membership in a particular social group, or political opinion. The IJ also denied relief under the CAT, holding that Velasquez-Garzon failed to demonstrate that she would be tortured by a public official upon return. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision, concluding that while Velasquez-Garzon's fear of harm was certainly understandable, it was an insufficient basis for asylum and withholding removal. The Board also agreed that Velasquez-Garzon had not established that it was more likely than not that she would be subject to torture "by or at the instigation of or with the acquiescence of a public official or person acting in an official capacity." Finally, the Board concluded that the new evidence Velasquez-Garzon offered on appeal could not be considered. Velasquez-Garzon filed a timely petition for review.[1]

"[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citation

---

[1] Velasquez-Garzon has waived her claim for CAT relief by failing to pursue it in her brief to this Court. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

3

omitted).  An applicant for asylum has the burden of establishing that she is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]; see 8 C.F.R. 208.13; Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001).  "[A] key task for any asylum applicant is to show a sufficient 'nexus' between persecution and one of the listed protected grounds."  Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009).

The record in this case establishes that the FARC, or a group affiliated with the FARC, assaulted and threatened Velasquez-Garzon because she did not repay money that the organization had lent to her.  Velasquez-Garzon alleges that "this is no 'purely personal matter'" because "[e]verything the FARC does is politically connected and has a political goal."  Pet'r's Br., 7.  Notably, however, "[p]ersecution on account of . . . political opinion . . . is persecution on account of the *victim's* political opinion, not the persecutor's."  INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992) (internal quotations omitted).  Velasquez-Garzon testified that she was not a member of a political group, and there is no indication in the record that the FARC imputed a political opinion to her.  See Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (per curiam) (holding that refusal to pay extortion money to the FARC did not constitute persecution on account of actual or imputed political opinion).

We also reject Velasquez-Garzon's contention that she is a member of a particular

4

social group made up of FARC victims.  See Pet'r's Br., 6.  We have held that "membership in a 'particular social group' can be attributed to either:  (1) those who possess immutable characteristics such as race, gender or a prior position, status or condition; or (2) those who possess a characteristic that is capable of being changed but is of such fundamental importance that individuals should not be required to modify it, e.g., religion."  Escobar v. Gonzales, 417 F.3d 363, 367 (3d Cir. 2005).  "[T]he persecution cannot be what defines the contours of the group."  Id.; see also Lukwago v. Ashcroft, 329 F.3d 157, 172 (3d Cir. 2003) (holding "that the 'particular social group' must exist independently of the persecution suffered by the applicant for asylum.").  Velasquez-Garzon also asserts that she was targeted "as a person who would be able to provide some service to the FARC."  Pet'r's Br., 8.  The characteristics of such a group, however, are "far too vague and all encompassing to . . . set the perimeters for a protected group."[2] Escobar, 417 F.3d at 368; cf. Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 345 (3d Cir. 2008) (recognizing social group defined as "women who have escaped involuntary servitude after being abducted and confined by the FARC").

In sum, we conclude that the BIA's decision to deny Velasquez-Garzon's applications for asylum and withholding of removal rests upon substantial evidence.  We

---

[2] Velasquez-Garzon claims that the IJ should have "looked more closely at the Department of State's Human Rights Practices Report" and faults the BIA for refusing to consider new evidence on appeal.  That material, however, does not bear on whether she has established that she was persecuted on account of a protected ground.

5

will therefore deny the petition for review.