**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-4263 & 10-4463
(Consolidated)
_____

TATIANA PARINOV;
MAXIM PARINOV,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A099-601-851 & A099-601-852)
Immigration Judge: Honorable Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2011

Before: FUENTES, VANASKIE and ROTH, Circuit Judges

(Opinion filed: November 1, 2011)
_____

OPINION
_____

PER CURIAM

Petitioners seek review of the decisions of the Board of Immigration Appeals

("BIA") dismissing their appeal from the Immigration Judge's ("IJ") denial of their

applications for relief, and denying their second motion to reopen. For the reasons that follow, we will deny the consolidated petitions for review.

Tatiana Parinova,[1] a native of the Soviet Union and a citizen of Russia, entered the United States on a travel visa in August 2005. She affirmatively applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), basing her claims for relief on her Jewish ethnicity.[2] Petitioners were placed into removal proceedings for remaining in the United States for longer than permitted, in violation of 8 U.S.C. § 1227(a)(1)(B). At the hearing, both Parinova and her husband testified about their experiences in Russia, describing the rampant anti-Semitism, and the acquiescence and even participation of the Government in such behavior. With respect to their claims of persecution, Parinova testified about being called derogatory names while riding a bus with her mother, that her husband was denied a promotion when his employer found out that she was Jewish, that they received threatening anti-Semitic phone calls, that there were graffiti and swastikas everywhere, including in their apartment building, and that someone left feces outside their door and urinated on their doors and gates. Parinova testified that in 2002, she was assaulted and robbed while on the elevator in her husband's sister's apartment building. Her husband's sister was married to a Jewish man. Parinova testified that her attacker took her money and jewelry,

---

[1] Petitioner's name appears as "Parinov" in the caption. However, she refers to herself as "Parinova" throughout. Accordingly, we will do the same.
[2] Parinova is the lead petitioner. Her husband, Maxim Parinov, seeks derivative asylum.

called her a kike, and told her that he knew who she was visiting in the building. Parinova reported this incident to the police but they did not investigate it. A few months later, her husband was assaulted by two men on the street who allegedly told him that they had warned him to leave but he had not heeded their warning. Again the police declined to investigate. Two weeks later their garage was broken into. That time, the police officer took a report, but no arrest was ever made. Parinova also submitted a statement from an expert witness, Nikolai Butkevich, indicating that anti-Semitism remained prevalent in Russia.

Although the IJ found Parinova's general testimony regarding the occurrence of anti-Semitic acts in Russia to be credible and supported by the documentary evidence, the IJ held that she had failed to prove that she herself was Jewish, or whether any acts of violence or intimidation she may have suffered were plausibly on account of her ethnicity. In support of this conclusion, the IJ cited the absence of her own testimony or expert testimony explaining how she could be identified as Jewish by a stranger. Additionally, the IJ found that Parinova failed to provide any corroboration from her sister, mother, or any other family members indicating that they too had been identified by strangers as being Jewish and targeted on that account. Accordingly, the IJ found that Parinova failed to prove that her persecutors knew of or were motivated by her ethnicity and, therefore, had not carried her burden of demonstrating past persecution or a likelihood of future persecution or torture in Russia on account of a protected ground.

Parinova retained new counsel and appealed to the BIA, which affirmed the IJ's

decision. (A.R. 1282-84.) In a footnote, however, the BIA disagreed with the IJ's statement that Parinova did not present a single document to reflect her ethnicity. The BIA cited Parinova's mother's birth certificate which reflected that her mother (Parinova's grandmother) was Jewish. However, the BIA concluded that this misstatement by the IJ and the documentation of Parinova's grandmother's ethnicity did not affect the IJ's conclusion that she had not met her burden of proof. The BIA otherwise concluded that the IJ had provided specific cogent reasons for deeming Parinova's testimony implausible, and had properly relied on the absence of reasonably available, relevant corroborative evidence in reaching her decision.[3]

Parinova timely filed a petition for review, which was docketed as C.A. No. 09-4263. While her petition for review was pending, Parinova filed a motion to reopen with the BIA, alleging that her first attorney, who represented her before the IJ, was ineffective. (A.R. 109-126.) The BIA denied the motion to reopen on October 15, 2010, holding that it could not find that her prior attorney prevented her from obtaining corroborating evidence from her family members. (A.R. 1277-78.) The BIA further held

---

[3] Parinova attempted to provide the requested corroboration to the BIA on appeal. However, the BIA declined to consider it for the first time under those circumstances, see 8 C.F.R. § 1003.1(d)(B)(iv), and did not remand to the IJ to consider the evidence in the first instance, as Parinova could not show that the evidence was previously unavailable and could not have been discovered through the exercise of due diligence. See 8 C.F.R. § 1003.2(c)(1). In fact, Parinova's hearing had been continued for sixteen months following her direct examination in order to allow for the authentication of some of her documentary evidence. She could have used that opportunity to obtain the corroborative evidence before her cross-examination resumed.

that she had not demonstrated that she was prejudiced by the alleged ineffectiveness of her attorney as the letters from her mother and sister that she later sought to submit did not indicate that they had ever suffered persecution at the hands of strangers, nor did her mother's letter corroborate her account of being harassed on the bus while traveling together. (A.R. 46-47, 56-57.) Parinova did not file a petition for review from that decision.

Through new counsel, Parinova filed a second motion to reopen with the BIA on November 1, 2010, alleging that her second attorney, who represented her in connection with her appeal to the BIA and her first motion to reopen, had been ineffective. (A.R. 38-66.) In it, she maintained that both the time and number limitations under 8 C.F.R. § 1003.2 should be equitably tolled or, in the alternative, that the Board should consider her second motion to reopen to be her first because the prior motion to reopen was "thoroughly devoid of any legal argument." In her motion, Parinova primarily maintained that the IJ erred in finding that she was not Jewish, that the IJ placed undue weight on her failure to provide corroboration, and that the IJ improperly placed the burden of proving how her attackers knew she was Jewish on Parinova.

The BIA denied the motion to reopen, explaining that, to the extent Parinova sought reconsideration based on any previously raised issues related to credibility, corroboration, or the ineffective assistance of her first attorney, she failed to identify any error of fact of law in the Board's previous decision which would alter the outcome of the case. (A.R. 3-4.) The Board further held that the motion was both time and number

5

barred, that she failed to demonstrate that she was prejudiced by any action or inaction of prior counsel, and that it would not exercise its discretion to sua sponte reopen her proceedings.

Parinova filed a petition for review from the BIA's November 19, 2010 denial of her motion to reopen. See C.A. No. 10-4463.[4] By order dated January 25, 2011, we consolidated the two petitions for review and permitted the parties to file supplemental briefs addressing all issues in both appeals.

We have jurisdiction over this petition for review pursuant to 8 U.S.C. § 1252. We exercise de novo review over the legal determinations of the BIA, see Kaplun v. Attorney Gen., 602 F.3d 260, 265 (3d Cir. 2010), and review factual determinations, including adverse credibility determinations, for substantial evidence. See Berishaj v. Ashcroft, 378 F.3d 314, 322 (3d Cir. 2004). Under this standard, we will uphold an IJ's finding unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'" See Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). An IJ may determine that an alien is not credible based on inconsistencies in her testimony and its overall implausibility. See Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). While an adverse credibility determination may properly be based on implausibility or inherent improbability, the IJ must provide

specific, cogent reasons for such a determination.  See Berishaj, 378 F.3d at 324.

In her petition for review, Parinova argues that the IJ erred in determining that Parinova did not prove her ethnicity.  However, the BIA found that Parinova's grandmother's birth certificate showed that her grandmother was Jewish, and that her ethnicity could be imputed to Parinova.  Because the BIA has already rejected the IJ's factual finding regarding Parinova's ethnicity, we need not address the propriety of the IJ's finding.

Both the IJ and the BIA found that Parinova failed to demonstrate a nexus between the harm she and her husband faced at the hands of strangers and her Jewish ethnicity.  While the INA does not require that an alien provide direct proof of her persecutor's motives, he "must provide *some* evidence of it, direct or circumstantial."  INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992); see also Ndayshimiye v. Attorney Gen., 557 F.3d 124, 129 (3d Cir. 2009) ("[A] key task for any asylum applicant is to show a sufficient 'nexus' between persecution and one of the listed protected grounds.").  Parinova testified that she did not wear clothing or jewelry identifying her as Jewish.  She did not attend religious services or celebrate Jewish holidays.  She testified that her mother was able to change her first name from "Riva" to "Rita" so people would not think she was Jewish.  It was not until Parinova's husband affirmatively disclosed her ethnicity that his

---

[4] As stated earlier, Parinova failed to file a petition for review from the BIA's denial of her first motion to reopen, and the petition for review filed in C.A. No. 10-4463 is not timely with respect to that denial.  See 8 U.S.C. § 1252(b)(1).

employer became aware of it. While Parinova testified that graffiti with derogatory statements and swastikas were painted on the door and walls in her apartment building (A.R. 586), she also testified that there were anti-Semitic writings in lobbies and on fences and benches throughout the city. (A.R. 570 ("Not, of course, it's not every single one, but you can, you go in park you see one, you see benches with, and I can tell you right now, Your Honor, I will enter the lobby of, of the building where I resided, you see swastika and graffiti blaming the Jews.").) While Parinova did claim that the man who robbed her called her a "dirty Jew," the IJ concluded that Parinova had not demonstrated that the incident was anything other than a robbery. We have held that evidence of "general ethnic difficulties would not compel a reasonable factfinder to conclude that [such incidents of violence] were 'on account of' [petitioner's] ethnicity." Lie v. Ashcroft, 396 F.3d 530, 535-36 (3d Cir. 2005). Without any additional evidence of her persecutor's motive in the record, we are not compelled to conclude that the IJ's finding was in error.

Furthermore, the IJ identified several pieces of corroboration which might have helped to bolster Parinova's claim that she and her husband were targeted for harassment and mistreatment *on account of* her ethnicity. Given that her sister is a legal permanent resident residing in Delaware, within close proximity to the location of the hearing, and that Parinova is in regular contact with her mother, the IJ noted that she could have

Accordingly, the merits of the BIA's disposition of Parinova's first motion to reopen are not before us.

8

provided corroboration from either or both of them that she was targeted on account of her ethnicity, or that they had been so targeted in the past. Under Abdulai v. Ashcroft, 239 F.3d 542 (3d Cir. 2001), when faulting an applicant for failing to corroborate her claims, the IJ must: (1) identify facts for which it is reasonable to expect corroboration; (2) inquire as to whether the applicant has provided information or corroboration in the record; and (3) analyze whether the applicant has adequately explained his or her failure to do so. Id. at 554. We cannot conclude that the IJ failed to comply with these directives.

For the same reasons, the IJ found that Parinova had not established an objectively reasonable fear of future persecution if she and her husband were to return to Russia. Lie, 396 F.3d at 536. Nor had she shown that it was more likely than not that they would be tortured by or with the acquiescence of the government if removed to Russia. See 8 C.F.R. § 208.16(c)(2). Parinova has not advanced any basis on which we could disagree with these findings.

With respect to the BIA's denial of her second motion to reopen, Parinova argues that the Board should have "equitably tolled" the number and time limitations due to prior counsel's ineffectiveness. While attorney ineffectiveness may serve as a basis for equitable tolling, see Mahmood v. Gonzales, 427 F.3d 248, 250-53 (3d Cir. 2005), Parinova does not identify any conduct of either of her prior attorneys which prevented her from complying with the time or number limitations. Rather, she expresses displeasure with the merits of the arguments made by her prior attorneys and the fact that

9

they were unsuccessful. Nonetheless, it is clear from a review of the Board's decision that, even if it had applied equitable tolling, because Parinova failed to show that the outcome of her appeal would have been different had her second attorney raised any additional arguments, she did not demonstrate the prejudice required to make out a claim for ineffective assistance of counsel. See Fadiga v. Attorney Gen., 488 F.3d 142, 155 (3d Cir. 2007). Accordingly, we cannot conclude that the BIA abused its discretion in denying her motion to reopen. See Shardar v. Attorney Gen., 503 F.3d 308, 313 (3d Cir. 2007). Additionally, we lack jurisdiction to review the BIA's decision not to reopen sua sponte. See Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003).

Based on the foregoing, we conclude that the BIA did not err in dismissing Parinova's appeal or denying her second motion to reopen. Accordingly, we will deny the petitions for review. Petitioners' motion to file a reply brief out of time is granted.